**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**Rita Kips AYER, et al.,**
**Defendants, Appellees,**

**Universal Aircraft Corporation, S.A.,**
**Defendant, Appellant.**

**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**Rita Kips AYER, Defendant, Appellant.**

**Nos. 88–1066, 88–1067.**

United States Court of Appeals,
First Circuit.

Submitted July 18, 1988.

Decided Sept. 26, 1988.

Edward B. Ginn and Kline &. Gordon, Boston, Mass., on brief for Universal Aircraft Corp., S.A. and Rita Kips Ayer, defendants, appellants.

William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, David I. Pincus, and Regina S. Moriarty, Tax Div., Dept. of Justice,

Washington, D.C., on brief for plaintiff, appellee.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

SELYA, Circuit Judge.

The stage was set for these appeals by the filing of an action to enforce certain federal tax liens in the United States District Court for the District of Massachusetts. The cast of characters, in no especial order, is as follows:

1. The taxpayers: Frederick B. Ayer and his wife, defendant-appellant Rita Kips Ayer.

2. The debt: upward of $820,000 in taxes, penalties, and interest, assessed against the taxpayers, jointly and severally.

3. The property: a parcel of real estate situated at 78 Main Street, Nantucket, Massachusetts (Property), owned by Mrs. Ayer.

4. The affiliated entity: defendant-appellant Universal Aircraft Corporation S.A. (Universal), a Panamanian firm in which Frederick B. Ayer was (or had been) a principal. Universal claimed to hold a valid second mortgage on the Property.

5. The departed defendant: First National Bank of Boston. As originally drawn, the complaint joined three defendants: the bank (*qua* mortgagee), Mrs. Ayer, and Universal. Upon its prompt disclaimer of any interest in the Property, the Bank was dropped as a party.

6. The villain of the piece: plaintiff-appellee United States of America, creditor and lienholder.

Before the house lights are lowered, we rehearse the travel of the proceedings below.

I

The United States filed suit in the district court on October 8, 1985. On January 17, 1986, it caused the summons and complaint to be served on Mrs. Ayer by certified mail at the Ritz Towers, 465 Park Avenue, New York City. At about the same time, the government tried to reach Universal by serving Mr. Ayer, thought to be its president, at the identical address. This attempt was unsuccessful; husband and wife had become estranged, and he had moved. There followed a further failed effort to serve the corporation at Mr. Ayer's former offices in New York. The district court, understandably, became impatient to get the show on the road. On February 18, 1986, the court acted sua sponte, ordaining that the suit would be dismissed unless proof of service was filed or good cause shown for neglect to serve.[1]

On cue, plaintiff complied with the Rule 4(j) order by filing (a) as to Rita Ayer, the marshal's return-of-process (ROP) form and the certified mail receipt; and (b) as to Universal, the process receipts explaining the failed attempts to serve. The district court, seemingly satisfied with the recital, withheld dismissal, instead entering a scheduling order on May 21, 1986. *See* Fed.R.Civ.P. 16. Some months later, however, the court held a status conference, in consequence of which it ordered service of process to be completed by February 19, 1987. The government thereupon managed to locate a new business address for the elusive Frederick Ayer. It served him by certified mail in Miami during January 1987, as Universal's proxy.

---

1. The district court's order invoked Rule 4(j) of the Civil Rules, which provides in material part:
   If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. Fed.R.Civ.P. 4(j).

On March 30, the court held another status conference. Plaintiff's counsel represented that both appellants, though served, had neglected to answer. From there, the script takes a familiar turn. On July 24, the United States applied for entry of default and for a default judgment. *See generally* Fed.R.Civ.P. 55. It included with the moving papers a certificate signed by its counsel which delineated the service theretofore made on appellants. Judgment by default was entered on July 28, 1987.

Some six weeks later, both Mrs. Ayer and the corporation entered stage left and moved to vacate judgment under Fed.R. Civ.P. 60(b).[2] The motions each asserted that due and proper service had not been effected. Specifically, Mrs. Ayer alleged by affidavit that her home was in Nantucket, not New York City, and said that she should have been served there. Universal relied on an affidavit in which Frederick Ayer emoted that, when service was made upon him in Universal's behalf, he was no longer featured as its president; and in any event, the summons was misaddressed. Apparently convinced that the best defense is a good offense, appellants also filed a motion to dismiss the complaint for noncompliance with Fed.R.Civ.P. 4(j). The government successfully opposed all of the motions. These appeals ensued.

As the curtain rises, we address Rule 4(j). Then, because we find service to have been timely (if not swift), the scene shifts to the district court's refusal to vacate the judgments.[3]

## II

Rule 4(j) was added to the Civil Rules as part of the wholesale rewriting of Rule 4 which took effect on February 26, 1983. Although the legislative history of these amendments is sparse—it comprises, in the main, a section-by-section analysis submitted in the House by Congressman Edwards—the evident purpose of Rule 4(j) was to compel parties and their counsel to be diligent in prosecuting causes of action. *See* 128 Cong.Rec. H9848 (daily ed. Dec. 15, 1982), *reprinted* in 1982 U.S.Code Cong. & Admin.News 4434, 4442; *Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir.1985). There is, of course, a glaring need for such sedulity. When suit is filed, the limitations period is ordinarily tolled. Yet, until the defendants receive some formal notice of the institution of the action, they are not assured a meaningful opportunity to discover, marshall, and preserve evidence, that is, to prepare a defense. Then, too, the court has a systemic interest in the progress of its own docket and in management of a burgeoning flow of litigation. To meet this amalgam of needs, the rule provides a stern sanction—dismissal—unless service is perfected within the 120–day limit or there is "good cause" for the time overrun.

### A

In this case, service was effected on at least one defendant (Universal) well beyond the expiration of the 120–day period.[4] In such circumstances, the burden of demonstrating the requisite good cause

---

2. Rule 60(b)(6) is a catchall which provides, somewhat tautologically, that, apart from the bases specified in the first five subsections of Rule 60(b), "the court may relieve a party ... from a final judgment ... for ... (6) any other reason justifying relief from the operation of the judgment." Although Rule 60(b)(4) specifically allows the district court to vacate a judgment if "the judgment is void," appellants did not choose to invoke that subsection.

3. Neither defendant has preserved any direct issue as to the propriety of the default judg-

ments themselves. The notices of appeal assign error in only two respects, viz., (a) the district court's failure to jettison the complaint on the authority of Rule 4(j); and (b) the district court's denial of the Rule 60(b)(6) vacation motions.

4. Mrs. Ayer was served by mail before the interval lapsed. The mere failure of plaintiff to file the appropriate indicia of service within the period, although perhaps evidencing shoddy practice, did not render the service untimely.

rested upon plaintiff. *See Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir.1985); *Wei*, 763 F.2d at 372; *cf. Saez Rivera v. Nissan Mfg. Co.*, 788 F.2d 819, 821 n. 2 (1st Cir.1986) (per curiam) (plaintiff has burden of proving proper service of process). Such a showing is, by its very nature, fact-specific. *Ruiz Varela v. Sanchez Velez*, 814 F.2d 821, 824 (1st Cir.1987) (per curiam); *Woods v. Partenreederei M.S. Yankee Clipper*, 112 F.R.D. 115, 116 (D.Mass.1986). The district judge pulls the laboring oar in scrutinizing plaintiff's efforts: we review the lower court's evaluation of the presence or absence of good cause in the Rule 4(j) milieu only for abuse of discretion. *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 83 (3d Cir.), *cert. denied*, 108 S.Ct. 455 (1987); *Ruiz Varela*, 814 F.2d at 823; *Fournier v. Textron, Inc.*, 776 F.2d 532, 534 (5th Cir. 1985); *see also United States for u/b De-Loss v. Kenner General Contractors, Inc.*, 764 F.2d 707, 710–11 (9th Cir.1985) (applying abuse-of-discretion standard); *Edwards v. Edwards*, 754 F.2d 298, 299 (8th Cir. 1985) (per curiam) (similar). .

### B

We have examined the record in this case with care, and find no misuse of the district judge's substantial discretion. There is nothing to suggest that the delay in service was intentional or that the government stood to benefit from it. On the opposite hand, there has been no meaningful demonstration of any cognizable prejudice resulting to defendants from the passage of additional time.[5] Nor are we aware of any "aggravating factors," *see Fournier*, 776 F.2d at 534, or of any affront to the district court's control over its own docket.

To be sure, appellants argue that the government should have known, as early as July 8, 1986, that Mr. Ayer was at best a bit player (not the proper party to be served on Universal's behalf), yet plunged ahead singlemindedly, heedless of that knowledge. The most that can be said, however, is that the cited testimony might well have *supported* a determination that no good cause existed to justify the failure of prompt service. But the nisi prius court made no such finding, and the evidence certainly did not *require* one. Likewise, appellants' asseveration that the complaint should have been thrown out because proof of service was not filed within twenty days of the entry of the February 18, 1986 order borders on the fatuous. Plaintiff responded within the twenty days. The district court accepted both plaintiff's proof of service on Mrs. Ayer and its excuse for not serving the corporate defendant as comprising due compliance with its order. That acceptance suffices. After all, the writing judge plays a "special role ... in elucidating the meaning and intendment of an order which he authored." *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel*, 833 F.2d 1059, 1066–67 (1st Cir.1987); *see also United States v. Levasseur*, 846 F.2d 786, 795 (1st Cir.1988) (same; citing *Martha's Vineyard*); *Lefkowitz v. Fair*, 816 F.2d 17, 22 (1st Cir. 1987) (similar).[6]

■ If Fed.R.Civ.P. 4(j) were enforced harshly and inflexibly, as appellants urge, the good cause exception would be written out of the rule by judicial fiat. We see no point in such a draconian construction. Congress, we believe, intended Rule 4(j) to

---

**5.** Indeed, the delay seems to have worked in appellants' favor. Mrs. Ayer remained in possession of the Property, and had the enjoyment of it. In the meantime, Universal—assuming its mortgage was genuine—presumably received whatever consideration was due.

**6.** Mrs. Ayer's argument that there was also noncompliance with district court orders (specifically, the orders of February 18, 1986, and December 19, 1986) concerning service upon her is ill-founded. That remonstrance depends entirely on the marshal's return of March 25, 1986, discussed *infra* at Part III(B), and fails for the reasons suggested in that discussion.

be a useful tool for docket management, not an instrument of oppression. Here, where (1) Universal was largely defunct and entirely shrouded in mystery; (2) the male lead, Frederick Ayer, had displayed a peregrinatory penchant; (3) plaintiff endeavored unsuccessfully within the 120–day period to obtain service, and thereafter appears to have attempted in good faith to respond to the spirit of the rule and to the concerns of the court below; and (4) no harm befell defendants as a result of the delay, a finding that good cause existed not to cancel the run, whether express or implied, seems supportable. The refusal to dismiss pursuant to Rule 4(j) was within the district court's discretion.

### III

We proceed to the next act, wherein appellants assign as error the denial of their respective Rule 60(b)(6) motions. We set out the standard of review, and then treat separately each party's critique.

### A

We audition briefly the legal benchmarks applicable to Rule 60(b) motions. Generally, they are not much in doubt:

> A motion for relief from a final judgment pursuant to Rule 60(b) is addressed to the discretion of the district court, *Dankese v. Defense Logistics Agency*, 693 F.2d 13, 15 (1st Cir.1982), may be granted only under exceptional circumstances, *Lepore v. Vidockler*, 792 F.2d 272, 274 (1st Cir.1986), and may be reviewed only for abuse of discretion, *Browder v. Illinois Department of Correction*, 434 U.S. at 263 n. 7.

*Rivera v. M/T Fossarina*, 840 F.2d 152, 156 (1st Cir.1988); *see also Ojeda–Toro v. Rivera–Mendez*, 853 F.2d 25, 29 (1st Cir.1988); *Pagan v. American Airlines,*

*Inc.*, 534 F.2d 990, 993 (1st Cir.1976). We apply these principles first to Mrs. Ayer's relief motion and then to Universal's. In so doing, we omit all reference to the arguments concerning Rule 4(j), as that topic has been exhausted, *see supra* Part II.

### B

■ Rita Ayer sought to vacate the judgment against her by showing that (1) she was not timely served; and (2) that the service accomplished was impuissant to confer jurisdiction over her person.

The first sally rests on the notion that the marshal's ROP form was inscribed "R.W.O.S."—which Ayer interprets as meaning "returned without service." This shows, she says, that she was not served in January 1986. Her contention, however, conveniently overlooks that the form bore a notation of the identifying number of a postal return receipt. In turn, the receipt —filed as an attachment to the ROP form—plainly indicated that service by certified mail had been effected on January 17, 1986. And on March 6, Robert Handros, a government attorney, filed an affidavit to like effect. Thus, to the extent the marshal's return was inconsistent with the remainder of the documentation on file in March 1986—and we do not suggest that it was—the district court was not bound thereby to conclude that Mrs. Ayer had not been served in mid-January, or to vacate the judgment.[7]

■ The balance of Mrs. Ayer's protest is equally meritless. Assuming service by certified mail at the Ritz Towers was seasonably accomplished, such service was sufficient to confer jurisdiction over her person.

The applicable Civil Rule provides in pertinent part:

> though perhaps of interest to the incurably curious among us, is unnecessary to the result which we reach.

---

7. The likeliest explanation for the cryptic acronym "R.W.O.S." would seem to be that it was meant to indicate only that no *personal* service had been effected. But such speculation,

Whenever a statute of the United States or an order of court thereunder provides for service of a summons, ... upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule.

Fed.R.Civ.P. 4(e). On this record, the district court was entitled to conclude that, at the time of service, Rita Ayer—though having abundant contacts with the Commonwealth—was not to be found there.[8] Accordingly, because no federal statute or court order provided a specific vehicle for service of process in this case, we look to the provisions of Rule 4 itself.

■ Fed.R.Civ.P. 4(c)(2)(C) directs us to the law of the forum. *See* Fed.R.Civ.P. 4(c)(2)(C)(i) (service sufficient if made "pursuant to the law of the State in which the district court is held for the service of summons or other like process upon any such defendant in ... the courts of general jurisdiction of that state"). In the Commonwealth, Mass.R.Civ.P. 4(e) governs out-of-state service on nonresidents. It provides in part as follows:

When any statute or law of the Commonwealth authorizes service of process outside the Commonwealth, the service shall be made by delivering a copy of the summons and of the complaint: ... by any form of mail addressed to the person to be served and requiring a signed receipt....

Mass.R.Civ.P. 4(e)(3). Certified mail obviously falls within this broad rubric. And appellant's claim that, since the receipt in this case was not signed by her, but by some functionary at the apartment building, the signed receipt was inadequate, is unavailing. In the Commonwealth, it is provided by statute that "[w]hen service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the Court." Mass. Gen.L. ch. 223A, § 6(b) (1985). It is undisputed that all mail at the Ritz Towers was received at the front desk. Mrs. Ayer, a tenant there, knew of the practice and apparently acquiesced in it. Accordingly, the clerk who presumably signed for the certified mail delivery was authorized to receive such delivery as appellant's agent. *Cf. Nowell v. Nowell*, 384 F.2d 951, 952–53 & n. 3 (5th Cir.1967), *cert. denied*, 390 U.S. 956 (1968); *Smith v. Kincaid*, 249 F.2d 243, 245 (6th Cir.1957). Because the clerk's signature on the postal receipt could be considered "other evidence of personal delivery" adequate to show that satisfactory service on Mrs. Ayer had been accomplished, the district court did not abuse its discretion in refusing to vacate the judgment entered in consequence of such service.

C

Universal's challenge to the adequacy of the service upon it—as distinguished from its previously-rejected timeliness challenge, *see supra* Part II—is essentially a two-pronged affair. The corporation contends that (1) the summons was not addressed to it; and (2) no authorized agent of Universal

---

**8.** Among other things, in a deposition taken prior to the entry of the default judgment, Mrs. Ayer testified that she resided at the Ritz Towers and had lived there since 1966. She disclaimed inhabiting the Nantucket Property, testifying that the Property, though owned by her, was operated as a "bed-and-breakfast" facility. To be sure, in an affidavit filed in conjunction with her Rule 60 motion, she asserted that she had resided in Nantucket for the last ten years. But that assertion seems far from credible. Implicit in the district court's decision to deny Mrs. Ayer's motion to vacate, which was based on that court's reading of "[t]he record submitted, including depositions," was a finding that she lived in New York City at the time of service. Such a determination was not against the weight of the evidence.

was served. We find that neither scenario suffices to fold the show.

■ The first ground need make but a cameo appearance. The ROP form filed after the purported service was carried out clearly shows the intended recipient of the summons to have been "Frederick B. Ayer, President, Universal Aircraft, S.A." The deputy marshal certified in the return that he "ha[d] legal evidence of service . . . on the . . . corporation." Thus, the court had a sound basis for concluding that the summons had not been misaddressed. To be sure, Mr. Ayer would now perform a different role, asserting by affidavit dated August 31, 1987 that the summons he received was directed not to Universal, but to Mrs. Ayer. The district court, however, was not at the mercy of an interested party's selective recall and was not compelled to accept the lines as Ayer chose self-interestedly to read them. The court acted within its discretion in declining to vacate the judgment on this score.[9]

■ Nor can Universal's claim that Ayer was improperly billed as its stand-in bear up under scrutiny. As noted earlier, *see supra* Part III(B), Fed.R.Civ.P. 4(c)(2)(C) refers us in this case to the law of the forum anent methods of service. By statute in the Commonwealth, service can be made upon a corporation by serving an "agent or other officer in charge of its business, or, if no such officer is found within the county, . . . any member of the corporation." Mass.Gen.L. ch. 223, § 37 (1985). This statute applies to foreign corporations. *See id.* at § 38. It was, we think, permissible for the district court to conclude that Mr. Ayer was such an agent.

On this point, the evidence is admittedly meagre. Ayer had been the president, and a stockholder, of Universal. He claims to have abandoned the roles: to have been supplanted as president by his eldest son in 1984, and to have given up his stock interest well before he was served. Yet the government offered evidence that, as late as March 1987, support payments due to Ayer's minor child[10] were sent monthly from Universal in the form of checks written on its account. Similarly, appellant Rita Ayer received some of her marital support payments from Universal. Although the question is not free from doubt, we think that the evidence was sufficiently conflicting that the judge was not required to vacate the judgment against the corporation. Frederick Ayer could supportably be found to have been a leading man in the corporate troupe, that is to say, a person in control of Universal's exchequer.

## IV

We need go no further. We have examined all of appellants' criticisms—including some which we have deemed unworthy of mention—and have found them, uniformly, to be wanting. The district court did not abuse its discretion either in denying the defendants' Rule 4(j) dismissal motion or in refusing to vacate the default judgments. It is time, therefore, for the final curtain.

AFFIRMED.

---

9. It is, we think, noteworthy that Frederick B. Ayer admitted, in the same affidavit wherein he claimed the summons was misaddressed, that:
   On January 7, 1987 I was handed an unopened envelope by an employee of FBA, Inc., in Miami, Florida. The return receipt had been signed for by her. . . . The envelope was addressed Frederick Ayer, President, Universal Aircraft, c/o FDA, Inc., 7860 Northwest 76th Avenue, Miami, FL 33166. I opened the envelope and found a copy of the Complaint in

this case with a Summons addressed to Rita Kips–Ayer, Ritz Towers Apartment 29–A, 465 Park Avenue, New York, NY.

Thus, it is certain beyond peradventure that Universal, in the person of Ayer, received the certified mailing.

10. The child was born in August 1984. The evidence was in the form of a deposition of the child's mother.