751 F.Supp. 1366 (1990)
SCHWARTZ & ASSOCIATES, Plaintiff,
v.
ELITE LINE, INC., et al., Defendants.
No. 89-0175C(6).
United States District Court, E.D. Missouri, E.D.
November 26, 1990.
*1367 Richard Schwartz, St. Louis, Mo., pro se.
Kurt Hoener, Platke & Berkowitz, St. Louis, for defendants.
James Parrott, Richard Schwartz & Associates, St. Louis, Mo., for third-party defendants.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on the motions of defendants Elite Line, Inc. (Elite) and May L. Hsieh to quash issuance and purported service of summons, to dismiss for lack of personal jurisdiction and to dismiss for lack of subject matter jurisdiction.
In this action, plaintiff Schwartz & Associates seeks to recover $10,000 in attorneys' fees allegedly incurred by defendants Elite Line, Inc. and Mae L. Hsieh and Jerry L. Hsieh. Richard Schwartz, a Missouri resident and a partner in the plaintiff organization, contends that on May 20, 1987, he received a phone call in Missouri from defendant Mae L. Hsieh, a California resident, in which she requested that Schwartz *1368 represent Elite at a series of depositions scheduled in the Republic of China. Schwartz agreed to perform the services requested in exchange for a $10,000 advance payment from Elite. Thereafter, Schwartz received a $10,000 check drawn on the account of Elite and signed by Mae L. Hsieh. He endorsed and deposited the check and thereafter embarked for the Republic of China where he allegedly defended the interests of Elite at a series of depositions. During the course of a telephone conversation between Mae L. Hsieh in California and Richard Schwartz in the Republic of China, Hsieh informed plaintiff that she intended to stop payment on the $10,000 check. She did so and up to the present time Elite has refused to pay plaintiff for the services allegedly rendered. On the basis of these allegations, plaintiff has pleaded claims sounding in contract and in fraud.
Defendants have moved to dismiss for lack of subject matter jurisdiction contending that plaintiff has failed to plead an amount in controversy in excess of $50,000.00.
Plaintiff's jurisdictional statement contains an allegation that the amount in controversy exceeds $50,000.00. However, the requisite amount in controversy applicable to this dispute, which was filed on February 1, 1989, is $10,000, not $50,000. See Judicial Reform Act of 1988, Pub.L. No. 100-702, Title II §§ 201, 203, 102 Stat. 4646 (1988) (making the $50,000 amount in controversy requirement effective "on or after the 180th day after November 19, 1988," i.e., May 18, 1989). Plaintiff's complaint supports a claim for actual damages in the amount of $10,000 and includes a prayer for punitive damages. Therefore, the Court concludes that plaintiff has alleged the requisite amount in controversy. See Tackett v. Kidder, 616 F.2d 1050, 1053 (8th Cir.1980) (claim for punitive damages may be considered in determining amount in controversy). Accordingly, the Court concludes that that defendants' motions to dismiss for lack of subject matter jurisdiction should be denied.
Defendants also move to dismiss plaintiff's complaint for lack of personal jurisdiction. Defendants assert that plaintiff's complaint fails to allege facts which would support the exercise of personal jurisdiction over defendants. They contend that the complaint is devoid of allegations which would indicate that any act of defendants was performed or had an effect in Missouri. Plaintiff contends that it has alleged the existence of contacts sufficient to establish the making of a contract in Missouri or the commission of a tortious act within the state. In passing on a motion to dismiss for lack of jurisdiction over a non-resident, a federal diversity court is required to engage in a two-step inquiry: first, whether defendant committed one of the acts enumerated in the long arm statute; and second, whether the exercise of personal jurisdiction over defendant violates the due process clause of the fourteenth amendment. The Land-O-Nod Company v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir.1983); Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 312 (8th Cir.1982).
Plaintiff, the party seeking to invoke federal jurisdiction, has the burden of establishing that jurisdiction exists, and this burden may not be shifted to the challenging party. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir.1982). While the facts are viewed in the light most favorable to the plaintiffs, "there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist...." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977) (citations omitted). See also Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir.1977) (plaintiff need only make a prima facie showing of jurisdictional facts through submission of affidavits plus discovery materials); Greycas, Inc. v. Anderson, 584 F.Supp. 894, 895-96 (E.D.Mo.1984); 4 Wright & Miller, Federal Practice and Procedure: Civil § 1068 at 250 (1969).
Missouri's long-arm statute provides:

*1369 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting.
2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.
§ 506.500, R.S.Mo. (Supp.1986).
The due process clause of the fourteenth amendment places limits upon the power of a court to exercise personal jurisdiction over a non-resident defendant. It requires the defendant to have certain minimum contacts with the forum state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Land-O-Nod, 708 F.2d at 1340. Accord, World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). "In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations omitted). See also Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The defendant's contacts with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." World Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567. See also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).
In this circuit, the due process standard has devolved into a consideration of five factors:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977). See Land-O-Nod, 708 F.2d at 1340.
With respect to the tortious act prong of the Missouri long arm statute, the Court finds that plaintiff has alleged the commission of an extra-territorial tortious act which yielded consequences in Missouri. Specifically, plaintiff alleges that defendant Mae L. Hsieh, acting on behalf of Elite, fraudulently induced plaintiff to perform certain legal services. The Court concludes that this allegation is sufficient to support the exercise of personal jurisdiction under the Missouri long-arm statute. See Mo.Rev.Stat. § 506.500.1(3) (app. 1990); Institutional Food Marketing Assoc., Ltd. v. Golden State Strawberries, 747 F.2d 448, 453 (8th Cir.1984) (tortious act prong includes extra-territorial acts that produce consequences in the state); Sun World Lines, Ltd. v. March Shipping Corp., 585 F.Supp. 580, 584 (E.D.Mo.1984), aff'd on other grounds, 801 F.2d 1066 (8th Cir. 1986).
Plaintiff also alleges with respect to its contract claim that the last act leading to the formation of a binding contract occurred in Missouri. Whether or not defendants' contacts with Missouri are sufficient to subject them to Missouri long-arm jurisdiction for the breach of contract claim, the dismissal of the contract claim would be *1370 improvident because the fraud claim and the contract claim arise from the same set of operative facts. See Nelson v. R. Greenspan & Co., 613 F.Supp. 342, 345-46 (E.D.Mo.1985); Sun World Lines, 585 F.Supp. at 584.
The Court also concludes that the exercise of personal jurisdiction over defendant comports with the requirements of due process. Defendants purposefully availed themselves of the benefits of the forum by initiating contact with Schwartz & Associates. World Wide Volkswagen, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). When a non-resident defendant purposely directs his activities toward the forum and litigation arises as a result thereof, due process permits the assertion of personal jurisdiction over that defendant. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984).
On the basis of the foregoing, the Court concludes that defendants' motions to dismiss plaintiff's complaint for lack of personal jurisdiction should be denied.
Elite has also moved to quash service of the summons and complaint in this action. Elite alleges that plaintiff attempted to effect service on the corporation by delivering a copy of the summons and complaint to defendant Mae Hsieh at her home. Elite contends that such efforts do not comply with Fed.R.Civ.P. 4(d)(3) or with the method of service upon a corporation designated in Mo.Rev.Stat. § 506.510. Specifically, Elite asserts that Mae Hsieh was not, at the time of service, an "officer, managing or general agent or ... agent authorized by appointment or law to receive service of process" within the meaning of Fed.R.Civ.P. 4(d)(3) or the Missouri service statute. The Court concludes that service was proper under Rule 4(d)(3) and, therefore, will not discuss the propriety of service under the Missouri statute.
Courts interpreting Fed.R.Civ.P. 4(d)(3) have held that "service of process is not limited solely to officially designated officers, managing agents or agents appointed by law for the receipt of process." Direct Mail Spec. v. Eclat Computerized Tech., 840 F.2d 685, 688 (9th Cir.1988). Service has been found "sufficient when made upon individual who stands in such a position as to render it fair, reasonable and just to imply the authority on [her] part to receive service." Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa, 428 F.Supp. 1237, 1251 (S.D. N.Y.1977), quoted in Mail Spec. v. Eclat Computerized Tech., 840 F.2d at 688.
Inasmuch as Mae Hsieh signed the $10,000 check which was drawn on Elite's account and negotiated to secure plaintiff's services on behalf of Elite, the Court concludes that it is reasonable to imply authority on her part to receive service of summons for the corporation. See United States v. Ayer, 857 F.2d 881, 888 (1st Cir. 1988). In addition, there is no indication of prejudice to Elite as a result of Maw Hsieh's receipt of service or allegation that service upon Mae Hsieh in any way hindered Elite from obtaining actual knowledge of this lawsuit. Thus, the mode of service appears to have been fair and just. See Direct Mail Spec., 840 F.2d at 688. Accordingly, the Court concludes that defendant Elite Lines, Inc.'s motion to dismiss for improper service of process should be denied.

Third-Party Complaint
Defendants Mae Hsieh, Jerry Hsieh and Elite Lines, Inc. have filed a third-party complaint in this action against Melvin Belli, Sr. and Steven Fabbro. In that complaint defendants charge Belli and Fabbro with negligent provision of legal services and breach of a contract for the provision of legal services in connection with a lawsuit filed in California on behalf of Jerry Hsieh against Nike, Inc. Defendants further allege that the alleged failure of Belli and Fabbro to provide adequate legal representation "was the direct and proximate cause of any damages or injuries that [Schwartz & Associates] may have sustained herein." See Third-Party Complaint at 3-5.
*1371 Belli and Fabbro have moved to dismiss the third-party complaint. They contend that the complaint is devoid of allegations which would permit the Court to exercise personal jurisdiction over them. Belli and Fabbro have submitted affidavits in which they aver that they are California residents; that they are licensed to practice law in California; that they have not contracted to, or performed acts of legal representation in Missouri.
Elite contends that third-party defendants Belli and Fabbro effectively transacted business in Missouri by virtue of their designation on Richard Schwartz's letterhead as "of counsel." In an affidavit filed in support of the third-party complaint, Jerry Hsieh avers that pursuant to the contract for legal representation between Jerry Hsieh and Schwartz & Associates, Belli and Fabbro were obligated to represent Elite in the Nike litigation. Elite asserts that this undertaking constitutes the making of a contract in Missouri because the contract for legal representation was by its terms entered in St. Louis, Missouri. Finally, Elite argues that the relationship between Belli ad Schwartz is analogous to the relationship between an out-of-state manufacturer and a local distributor. Thus, Elite contends that Belli has purposefully availed himself of the benefits of doing business in Missouri and should therefore be subject to the jurisdiction of its courts.
In response, Belli, Fabbro and Schwartz have submitted affidavits in which they aver that Belli and Fabbro were not parties to the Missouri contract for legal representation between Schwartz and Jerry Hsieh. Belli further avers that he entered into an oral agreement with Richard Schwartz about March 17, 1983 in San Francisco, California, to act as local counsel for Jerry Hsieh in his lawsuit against Nike. Belli and Fabbro contend that they never performed any legal services on behalf of Jerry Hsieh or Elite in the State of Missouri. The affidavits further indicate that Schwartz withdrew from the Nike litigation in mid-May 1987 and that Fabbro had chief responsibility for the conduct of the litigation on behalf of Hsieh until the case was settled in September of 1987.
Having thoroughly reviewed the briefs and affidavits of the parties, the Court concludes that the third-party plaintiffs have failed to demonstrate the existence of contacts which would satisfy the requirements of the Missouri long arm statute. The written contract for legal representation executed by Jerry Hsieh and Richard Schwartz does not include any reference to either Belli or Fabbro. Therefore, there is no indication that either of these individuals entered into a contract which contemplated performance in Missouri. Moreover, there is no indication in the record before the Court that either Belli or Fabbro transacted business in Missouri in connection with the incidents that gave rise to this lawsuit. The affidavits submitted to the Court indicate that Jerry Hsieh acting through his attorney Richard Schwartz approached Belli and Fabbro in California and sought their assistance in connection with a lawsuit pending in California. These actions simply do not amount to the transaction of business in Missouri.
Accordingly, the Court concludes that the motion of third party defendants Belli and Fabbro to dismiss the third-party complaint for lack of personal jurisdiction should be granted.

ORDER
Pursuant to the memorandum filed on this date herein,
IT IS HEREBY ORDERED that the motion of third-party defendants Melvin Belli, Sr. and Steven Fabbro to dismiss the third-party complaint shall be and it is granted.
IT IS FURTHER ORDERED that defendants' motions to dismiss for lack of subject matter jurisdiction shall be and they are denied.
IT IS FURTHER ORDERED that defendants' motions to dismiss plaintiff's complaint for lack of personal jurisdiction shall be and it is denied.
IT IS FURTHER ORDERED that defendant Elite Lines, Inc.'s motion to dismiss *1372 for improper service of process shall be and it is denied.