BECKER, Circuit Judge,
Concurring and Dissenting.
I agree that summary judgment was properly granted to Bohringer and Ratzinger, and that the motion to compel discovery was properly denied, and hence I join in Parts HA, C & D of the majority opinion. I also agree that the motion for default judgment was properly denied. I cannot, however, join fully in Part IIB because I believe that good cause to extend the time for service of process beyond 120 days was present in this case, and hence I would remand with instructions to grant the 120 day extension.[1]
*1312 I.
In determining whether Petrucelli has set forth a showing of good cause, the majority measures the action of Petrucelli and his counsel against the principles laid down in Lovelace and Braxton. See Lovelace v. Acme Markets, 820 F.2d 81 (3d Cir.1987), cert. denied, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); Braxton v. United States, 817 F.2d 238 (3d Cir.1987). Those eases also involved instances where plaintiff’s failure to properly execute service resulted from counsel’s ill-advised reliance on representations made by an employed process server. Braxton, 817 F.2d at 242 (“The facts, therefore, present a scenario of unexplained delinquency on the part of the process server and lack of oversight by counsel.”); Lovelace, 820 F.2d at 84 (finding “misplaced reliance upon the word of the specially-appointed process server”). In my view, additional factors which present a clearer showing of good cause take this case out of the Braxton/Love-lace category, and more closely align it with our later opinion in Consolidated Freightways v. Larson, 827 F.2d 916 (3d Cir.1987), cert. denied 484 U.S. 1032, 108 S.Ct. 762, 98 L.Ed.2d 775 (1988).
In defining the scope of the “good cause” exception, we have equated it with the concept of “excusable neglect” of Fed.R.Civ.P. 6(b)(2). Dominic v. Hess Oil, 841 F.2d 513, 517 (3d Cir.1988); see also 2 James W. Moore et al., Moore’s Federal Practice ¶ 4.18[2] (2d ed. 1994) (“As for Rule 6(b)(2), there would seem to be no practical difference between good cause for not serving process and failure to serve process through excusable neglect.”). Indeed, Petrucelli has requested an extension of time under Rule 6(b)(2), which requires the district court to grant an extension of time, “where the failure to act was the result of excusable neglect.” Fed.R.Civ.P. 6(b)(2) (emphasis added). We have described excusable neglect as requiring “ ‘a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncomplianee within the time specified in the rules.’” Hess Oil, 841 F.2d at 517 (quoting Wright & Miller, Federal Practice and Procedures, § 1165 (1987)). Both elements are present in this case.
II.
By all accounts, Petrucelli has acted in good faith. In addition, Petrucelli has provided two reasonable bases, of a type not present in either Braxton or Lovelace, for his counsel’s noncompliance: (1) his counsel’s difficulty in locating the defendant, Jake Diel Corporation, now Excel (“Jake Diel”) within 120 days resulted from the corporation’s recent name change to Excel; and (2) the office of the Secretary of State of Oklahoma had informed counsel that service of the defendant could be effectuated through that office.
Petrucelli and his counsel were initially under the impression that Jake Diel was a Texas Corporation. App. at 66. However, when they were unable to find a listing for Jake Diel in Texas, they turned their attention to the records of the neighboring state of Oklahoma. App. at 61-70. When they made inquiry, officials in the office of the Oklahoma Secretary of State stated that Jake Diel was listed to do business in Oklahoma and that service could be effected through their office as Jake Diel’s agent. App. at 33. The Oklahoma officials also stated to counsel that their records reflected that Jake Diel had been ousted by the Secretary of State of Texas on 11/1/91 for failure to file the necessary reports. App. at 32. In response, Pe-trucelli’s counsel acting through process server, APS International, Ltd., effected mail service upon the Secretary of State of Oklahoma, who shortly thereafter informed them that Jake Diel had been served via certified mail. App. at 33. It was only after the 120 day time period had run that Petrucelli’s counsel realized that the defendant had not in fact been validly served through the Oklahoma Secretary of State. App. at 34; 67-68.
The majority contends that “the record is barren” of any correspondence with the Oklahoma Secretary of State to support Pe-trucelli’s contention of excusable neglect. Maj. Op. at 1306-67. I disagree. Attached to this dissent is a certificate from the Oklahoma Secretary of State received by Petru- *1313 celli certifying its acceptance of plaintiffs service of process on Jake Diel’s behalf. App. at 69. While the majority correctly points out that Petrucelli’s counsel failed to receive Form 18-A (as is required to effectuate service made pursuant to FRCP 4(C)(2)(c)(ii)), I do not believe that such a mistake vitiates the presence of good cause under the circumstances of this case. At all critical times, counsel was under the impression that the defendant could have been and was served through the Oklahoma Secretary of State.
In my view, the conduct of Petrucelli’s counsel is more analogous to the conduct of counsel in Consolidated Freightways Corp. v. Larson, 827 F.2d at 919, than in Braxton or Lovelace. In Consolidated Freightways we distinguished both Braxton and Lovelace and found that the district court had abused its discretion by failing to find excusable neglect where an attorney’s clerical error resulted in a failure to file a timely notice of appeal, holding that such an error was excusable neglect since,
counsel’s error was not the result of professional incompetence; that counsel is not attempting to create a facile excuse by which to extend the time for appeal, indeed counsel gained no advantage by the misdirection; and that the type of human error here involved, though certainly avoidable, is neither readily foreseeable nor capable of anticipation by counsel.
Consolidated Freightways, 827 F.2d at 919-20. I find this analysis to be applicable here. Petrucelli’s counsel’s failure to locate the defendant within 120 days, while avoidable, was not sufficient to justify denying Petrucelli his day in court. See Wright & Miller, supra, at § 1137 (“If good cause is measured too restrictively, then too many good faith plaintiffs may be treated harshly.”).
Essentially, the reason Petrucelli was unable to properly effectuate service was that the defendant had changed its name from Jake Diel to Excel. The question of the role of a defendant’s name change in a finding of good cause was not addressed by the Brax-ton and Lovelace panels and has, to date, never been addressed by this court.[2] While as the majority points out, it might have been possible for counsel to have located the defendant through certain sophisticated searches the failure to do so does not constitute inexcusable neglect considering counsel’s good faith efforts.
Petrueelli’s counsel, acting through APS International, searched the Texas corporate records for a Jake Diel Corporation and understandably was not able to locate the address of the re-named defendant. App. at 66. The Consolidated Freightways panel distinguished Braxton on similar grounds— the presence of a good faith effort on the part of counsel to comply with the procedural time limit. See Consolidated Freightways, 827 F.2d at 921 (“Unlike the attorney in Braxton, counsel in this matter made substantial good faith efforts to comply.”); see also PaineWebber Inc. v. Hartman, 921 F.2d 507 (3d Cir.1990) (reversing a district court’s denial of an extension of time as an abuse of discretion where “the notice of appeal was untimely despite counsel’s diligent efforts at compliance”).
Moreover, the facts of this case present an even more compelling instance of excusable neglect than even Consolidated Freightways, for there the failure to file a timely appeal was the result of a clerical error made by counsel or someone under counsel’s control. In this case, the plaintiff was misled into believing that service could be made in Oklahoma not only by their hired process server, but by the Oklahoma Secretary of State, who indicated that service of process could and had been made on the defendant through that office. In support of this reliance, Pe-trucelli points to his statement to the district court during the 120 day period that Jake Diel had been served, made in connection with his request for an extension of time in order that proper service could be effectuated under international law upon the German-based defendant, Bohringer & Ratzinger. App. at 141-15.
*1314 In discounting Petrucelli’s reliance on representations made by the Oklahoma Secretary of State’s office, the majority equates reliance on representation made by a hired process server with representations made by a government official. In support of this proposition the majority relies on an overly broad reading of Braxton, concluding that “we have previously held that reliance upon a third party or on a process server is an insufficient basis ... for granting an extension of time to effect service. Braxton, 817 F.2d at 242.” Maj.Op. at 1307 (emphasis added). But Braxton dealt with representations made by a process server hired by an attorney, and does not deal with, or even mention, representations by “third parties.” It would be astonishing indeed if Braxton stood for the proposition that any reliance on third parties, including government officials holding themselves out as agents of a defendant, would not suffice to establish good cause.
In addition, defendant Jake Diel was not prejudiced, because it had actual notice of the commencement of the litigation through the service of the cross-claim by the co-defendant, Bohringer & Ratzinger. The First Circuit has recognized the danger of applying the service of process time period “harshly and inflexibly,” in the absence of prejudice to the defendant. U.S. v. Ayer, 857 F.2d 881, 885-86 (1st Cir.1988) (“Congress, we believe, intended Rule 4(j) to be a useful tool for docket management, not an instrument of oppression.”). As was true in Ayer, this case presents “no meaningful demonstration of any cognizable prejudice resulting to defendants from the passage of additional time.” Id. In the absence of prejudice, Petrucelli’s efforts, although unsuccessful, to locate defendant Jake Diel, given its change in name and the misleading representations by government officials, constitutes good cause.
III.
For the foregoing reasons, I conclude that the district court erred in failing to extend for good cause the time for service. As I see it, the majority gives a narrow and wooden reading of good cause which might deny the plaintiff, who lost his left arm in an accident involving Jake Diel’s machine, from pursuing his claim against a defendant who had actual notice of the suit. As Justice Black reminded us, some 40 years ago, the “principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring then-problems before the courts.” Order Adopting Rules of the U.S. Supreme Court, 346 U.S. 945, 946 (April 12, 1954). Considering the substantial good faith efforts of Petrucel-li’s counsel to serve the defendant in this action, I believe that good cause to extend the time for service of process beyond 120 days is present. I would therefore reverse and remand with instructions to grant an extension of 120 days within which to effect service on defendant Jake Diel. To that extent, I respectfully dissent.
*1315 ATTACHMENT
[[Image here]]

. The majority reviews the district court's decision as to the presence of good cause under an abuse of discretion standard. I do not believe the adoption of such a standard satisfactorily accommodates the Congressional enactment of Rule 4(m). Under the former Rule 4(j), the decision whether to extend the time for service, while predicated on the existence of good cause, was solely entrusted to the district judge's discretion. Importantly, under the Rule 4(j) regime, what the reviewing court did was to analyze the district court's entire decision whether to extend the time for service or to dismiss the action. Correspondingly, the appellate review of the district court's decision under Rule 4(j) was appropriately conducted under an abuse of discretion standard. See Lovelace v. Acme Markets, 820 F.2d 81, 83 (3d Cir.1987), cert. denied 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); Braxton v. United States, 817 F.2d 238, 242 (3d Cir.1987).
However, as the majority correctly recognizes, under Rule 4(m) the inquiry is divided into two steps. If, as a factual matter, good cause is found, the district court is duty-bound to extend the time for service; in the absence of good cause, the district court has discretion as to whether or not to dismiss or extend the time for service. Given this regime, the majority’s review of both decisions for an abuse of discretion is anomalous. While the district court's latter decision should be reviewed for an abuse of discretion, it appears that the good cause determination itself has become a purely factual one, which should appropriately be reviewed under a clearly erroneous standard, since under the first step of the Rule 4(m) analysis the district court has no discretion.
In sum, this Congressionally mandated schema leaves no alternative but to review the district court’s good cause determination under a clearly erroneous standard. Notwithstanding this concern, I do not believe the distinction is outcome determinative here, for I would conclude that the district court erred in finding that Petrueelli failed to present a showing of good cause under *1312 either a clearly erroneous or an abuse of discretion standard of review.

. Moreover, there is no reported federal opinion addressing such a situation absent evidence of intentional evasion of service. See, e.g. Ruiz Varela v. Sanchez Velez, 814 F.2d 821 (1st Cir.1987) (remanding to the district court to reconsider the plaintiff's claim of good cause).