**MEDIA DUPLICATION SERVICES, LTD., Plaintiff, Appellee,**

v.

**HDG SOFTWARE, INC., Defendant, Appellant,**

**Joseph Wine, Appellant.**

**No. 90–1495.**

United States Court of Appeals, First Circuit.

Heard Oct. 1, 1990.

Decided March 27, 1991.

As Amended April 23, 1991.

**1230**

Marshall M. Schribman, Boston, Mass., with whom Joseph Wine, Braintree, Mass., was on brief, for defendant, appellant and appellant.

Harry C. Mezer, Boston, Mass., with whom M. Robert Queler, Wellesley, Mass., was on brief, for plaintiff, appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and WOODLOCK,* District Judge.

WOODLOCK, District Judge.

Trial counsel in this case, each separately pursuing a shortsighted and obfuscatory course, have together managed to suffuse a relatively modest piece of contract litigation with the mists of considerable confusion.

* Of the District of Massachusetts, sitting by desig-

The confusion began at the inception of the action when the defendant disingenuously declined to acknowledge the efficacy of service by mail. Confronted by the defendant's dissimulation regarding service, the plaintiff in turn never bothered to take the steps necessary to establish a perfected service.

The confusion continued through to the culmination of the case in the trial court, when defendant's counsel unilaterally undertook to absent himself from the scheduled trial itself, thereby promptly earning a $7,500 sanction. For his part, plaintiff's counsel attended the trial but failed to direct the court to what he understood—albeit mistakenly—to be an unresolved dispute concerning subject matter jurisdiction.

The outcome after this discreditable course of advocatory conduct is that the judgment on the merits for plaintiff must be reversed and the case, which doubtless will be recommenced, must be dismissed in the district court below. In addition, we remand for further consideration of the sanction the trial judge imposed for the failure of defendant's counsel to attend properly to the court's proceedings.

**I**

On January 25, 1989, plaintiff Media Duplication Services, Ltd. ("MDS") filed a complaint claiming $41,671.86 in damages for the alleged failure of defendant HDG Software, Inc. ("HDG") to pay MDS for software diskettes and manuals. The complaint also alleged that HDG willfully violated Mass.Gen.L. ch. 93A, § 11 by (i) ordering goods when HDG had neither the intention nor the ability to pay for them; (ii) falsely alleging defects in the goods to avoid payment; and (iii) falsely threatening to sue MDS without adequate factual or legal basis.

**A. *The Dispute Over Service of Process***

MDS attempted to serve HDG, a Massachusetts corporation, by mailing copies of the summons, complaint and Form 18-A—

nation.

the notice and acknowledgment form for service by mail—pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii). The material was sent by certified and regular mail, addressed to "HDG Software Inc." at the Massachusetts address MDS had used when it last did business with HDG. On March 7, 1989, MDS filed a copy of a return receipt reflecting delivery *in Florida* on February 13, 1989, and requested that HDG be defaulted for failing to answer the complaint. The district court issued the default the day it was requested.

On March 17, 1989, HDG entered a special appearance and moved the court to remove the default and either dismiss the complaint due to insufficient service of process or, in the alternative, permit HDG to answer late. In support, HDG filed the affidavit of Helen Gens, its sole officer and director. Mrs. Gens averred that HDG, while "still a Massachusetts corporation," stopped doing business in Massachusetts as of November, 1988. She declared that the purported mail service was delivered to her Florida residence and was received by a family member having no affiliation with HDG. She asserted that the service documents were not brought to her attention until the notice of default was also forwarded to Florida. Mrs. Gens never returned the 18–A acknowledgment form, and MDS never attempted to serve HDG by any other method.

MDS opposed HDG's motion, arguing that service was effective because HDG admitted receipt of the summons and complaint. The district court allowed the motion to remove the default, but denied without opinion the motion to dismiss due to invalid service. Thereafter, HDG filed its answer raising as defenses, *inter alia*, inadequate service and lack of diversity jurisdiction. A counterclaim alleged that MDS had breached its contract with HDG by making only partial delivery, by shipping defective goods, and by refusing to compensate HDG for replacement costs and loss of sales.

### B. *The Dispute Over Diversity Jurisdiction*

On September 3, 1989, MDS moved for summary judgment on its contract claim and against HDG on the counterclaim for defective goods, arguing that there was no dispute about HDG having purchased the goods and further that HDG had not established any evidence of defects. HDG responded on September 20 by filing: an opposition to the MDS motion for summary judgment, with supporting affidavits; a motion to strike the one affidavit MDS submitted in support of its motion for summary judgment; and a motion to dismiss for lack of subject matter jurisdiction.

The original papers reflect that the district court denied both the MDS motion for partial summary judgment and the HDG motion to dismiss for lack of subject matter jurisdiction by endorsement on October 26, 1989. However, these decisions were not recorded on the docket at that time. The decision denying the MDS motion for partial summary judgment was finally noted on the docket on April 20, 1990, the day after a pretrial conference was held. But no notation was ever recorded on the docket regarding the denial of the HDG motion to dismiss for lack of diversity jurisdiction. Thus, before us, counsel for both parties appeared to share the erroneous view that the trial court never expressly acted with respect to that motion. The motion to strike the affidavit was apparently never acted upon.

### C. *The Trial and The Sanction*

The pretrial conference on April 19 set the case down for jury trial beginning Monday, April 30, and resulted in an order requiring the parties to submit witness lists and voir dire questions by April 26.

On April 23, 1990, Attorney Wine, defense counsel, notified counsel for MDS by letter that HDG had instructed him not to prepare for or appear at trial because the court lacked jurisdiction. Attorney Wine did not himself notify the court of his intentions in this regard. In lieu of a pretrial memorandum, on April 26 counsel for MDS filed with the district court a copy of the letter from Attorney Wine along with a cover letter declaring the intention of attor-

neys for MDS to appear ready for trial on the appointed date.

Plaintiff's counsel appeared for trial on April 30, 1990. Before taking evidence the trial judge asked counsel for MDS whether there were any outstanding disputes about jurisdiction. Despite the fact that MDS has continuously maintained—even in argument before us—that the district court never explicitly acted on the HDG motion to dismiss on grounds of lack of diversity,[1] trial counsel for MDS in the following colloquy failed to alert the trial judge regarding what he believed to be a jurisdictional loose end.

> THE COURT: The issue of jurisdiction has been determined, has it not?
>
> MR. QUELER: It has your Honor.
>
> THE COURT: Well, I need not make any further findings on the question of jurisdiction. This Court has jurisdiction of this cause of action.
>
> MR. QUELER: That's correct, your Honor.

The trial judge summarily found for plaintiff on the breach of contract claim. After hearing testimony from one witness, the court found the conduct of HDG, including its pre-trial strategy of pressing the defense and counterclaim that the goods were defective, was in bad faith and in violation of Mass.Gen.L. ch. 93A. Consequently, the court assessed triple damages against HDG as well as attorney's fees of $7500. In addition, the court ruled that the conduct of defense counsel in pressing for trial on the issue of defective goods and then failing to appear on the ground that the court lacked jurisdiction— without notifying the court of his intentions—was "in bad faith and close to contumacious of this court's order." The court imposed an additional $7500 sanction against Attorney Wine personally, payable to counsel for MDS, for "gross" violation of Fed.R.Civ.P. 11. The trial judge thereafter signed a form Order on Sanctions, prepared by plaintiff's counsel, reciting

Fed.R.Civ.P. 16 and 28 U.S.C. § 1927, in addition to Rule 11, as authority for the sanction.

On appeal, HDG argues that the district court erred by not granting the motions to dismiss for lack of personal jurisdiction and lack of subject matter jurisdiction. Defense counsel also argues that the trial judge erred by imposing sanctions without affording him notice and an opportunity to be heard.

## II

We are of the view the district court's assertion of personal jurisdiction over HDG was erroneous, given the manner of service undertaken by MDS. This lack of personal jurisdiction alone is sufficient basis to reverse the judgment and order the case dismissed. In addition, because we assume that plaintiff may seek to recommence the action with proper service in the United States District Court for the District of Massachusetts, and because we have concluded that diversity jurisdiction was not established there in this proceeding, we also base our decision to dismiss the judgment on grounds of lack of subject matter jurisdiction.

### A. *Service to Obtain Personal Jurisdiction*

#### 1. Fed.R.Civ.P. 4(c)(2)(C)(ii)

■ HDG contends that personal jurisdiction was never established because service of process is ineffective under Fed.R. Civ.P. 4(c)(2)(C)(ii) unless the Form 18–A acknowledgment is returned. The Rule provides in pertinent part:

> (C) A summons and complaint may be served upon a [corporate defendant]
>
> . . . . .
>
> (ii) by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming

---

1. MDS did suggest that the question of diversity jurisdiction had been resolved indirectly by the District Court. Thus, in its brief before us, MDS argued that the denial of the motion for partial summary judgment and "the setting of the case for a trial on the merits, ... effectively denied HDG's motion to dismiss for lack of subject matter jurisdiction."

substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3).

MDS concedes that the Form 18–A acknowledgment was never returned. But it counters the ineffective service contention, pressed by HDG throughout the litigation before the district court,[2] by asserting that service was effective despite the absence of the acknowledgment. Valid service was accomplished, MDS argues, because actual notice was achieved, as evidenced by the admissions of Mrs. Gens.

▮ The issue whether actual notice can satisfy Rule 4(c)(2)(C)(ii) without the return of a Form 18–A acknowledgment is one which has split the circuits. MDS relies on *Morse v. Elmira Country Club*, 752 F.2d 35 (2d Cir.1984), in arguing that service was effective under Fed.R.Civ.P. 4(c)(2)(C)(ii) even absent formal acknowledgment by HDG. In *Morse*, the Second Circuit held that the requirements of the service by mail provision in Fed.R.Civ.P. 4(c)(2)(C)(ii) were satisfied where it was demonstrated the defendant received the summons and complaint but declined to acknowledge it. 752 F.2d at 39.

*Morse* has been severely criticized in the commentary. *See, e.g.*, Sinclair, *Service of Process: Rethinking The Theory and Procedure of Serving Process Under Federal Rule 4(c)*, 73 Va.L.Rev. 1183, 1266 (1987) (terming *Morse* "a fanciful interpretation of the rule"). And all other circuits addressing the question hold to the contrary by requiring the acknowledgment form be returned before service under Rule 4(c)(2)(C)(ii) is effective. *See, e.g., McDonald v. United States*, 898 F.2d 466, 468 (5th Cir.1990); *Gulley v. Mayo Found.*, 886 F.2d 161, 165 (8th Cir.1989); *S.J. Groves & Sons Co. v. J.A. Montgomery, Inc.*, 866 F.2d 101, 102 (4th Cir.1989) (citing *Armco, Inc., v. Penrod–Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)); *Geiger v. Allen*, 850 F.2d 330, 332 n. 3 (7th Cir.1988); *Worrell v. B.F. Goodrich Co.*, 845 F.2d 840, 841–42 (9th Cir. 1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699, *reh. denied* 492 U.S. 938, 110 S.Ct. 24, 106 L.Ed.2d 636 (1989); *Combs v. Nick Garin Trucking*, 825 F.2d 437, 448 (D.C.Cir.1987); *Green v. Humphrey Elevator & Truck Co.*, 816 F.2d 877, 879–83 (3d Cir.1987); *see also United States v. Gluklick*, 801 F.2d 834, 836 (6th Cir.1986) (citing with approval other courts which have held failure to acknowledge renders service invalid), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987).

We have yet to take a position on whether service may be effective under Fed.R.Civ.P. 4(c)(2)(C)(ii) absent an acknowledgment.[3] We now join all the other circuits

---

**2.** The record clearly establishes that HDG never waived the right to contest personal jurisdiction. HDG raised this objection in its first motion to dismiss and continued to assert it in its answer, in its opposition to the MDS motion for summary judgment, and in its motion to dismiss for lack of subject matter jurisdiction. Thus, there was no waiver under Fed.R.Civ.P. 12(g), (h)(1).

MDS, however, argues that by continued participation (including pursuit of a counterclaim), HDG submitted to the court's jurisdiction and thus waived insufficiency of service or other objection to personal jurisdiction. Although the Supreme Court has held that defects in personal jurisdiction may be waived by conduct, none of the examples the Court has listed are even remotely comparable to the actions of HDG. *See generally Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 704–05, 102 S.Ct.

2099, 2105–06, 72 L.Ed.2d 492 (1982). The authority cited by MDS is also easily distinguished. In *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st Cir.1983), the defendant participated in pretrial activities for four years before it first moved for dismissal based on insufficient service of process. And in *J. Slotnik Co. v. Clemco Indus.*, 127 F.R.D. 435, 441 (D.Mass.1989), the court held the defendant had waived any defects in service of process, pursuant to Fed.R.Civ.P. 12(h)(1), by failure to raise the issue in the first pleadings it filed in the case.

**3.** Contrary to the argument offered by MDS, this court did not decide these issues in *United States v. Ayer*, 857 F.2d 881 (1st Cir.1988). In *Ayer* we found that adequate service was made pursuant to the law of the forum state, as permitted by 4(c)(2)(C)(i). 857 F.2d at 887. Nothing in *Ayer* suggests service was originally at-

which have spoken in declining to follow *Morse*. Not only does the *Morse* approach run contrary to the plain language and apparent purpose of the Rule, it invites burdensome evidentiary hearings on the question whether a summons and complaint were actually received in a timely manner by the proper party. Finally, the *Morse* rule may subject a defendant to unfair surprise because the required acknowledgment form advises the recipient that the only consequence of failing to return the form is that she may be required to pay the expenses of alternative service.[4]

Rule 4(c)(2)(C)(ii) was an effort to provide a cost-saving mechanism to establish service of process by securing the cooperation of the defendant.[5] But in the absence of timely assent by the defendant, (C)(ii) service is ineffective and the plaintiff must resort to another authorized form of service. A plaintiff who is unlikely to obtain cooperation from a defendant with respect to service runs the risk of delaying effective service if it first resorts to (C)(ii). *See* Siegel, *Practice Commentary on Amendment of Federal Rule 4 (Eff. Feb. 26, 1983)*

*with Special Statute of Limitations Precautions*, 96 F.R.D. 88, 113–14 (1983) (suggesting that if (C)(ii) service is to be attempted, it should be initiated promptly so that if it fails, a second attempt may be made by other means within the 120 day time limit). The plaintiff here faces the consequence of that risk.

#### 2. Fed.R.Civ.P. 4(c)(2)(C)(i)

■■■ MDS also argued before the district court that even if the formalities of Rule 4(c)(2)(C)(ii) were not observed, service deficient under that rule can alternatively be effective under Fed.R.Civ.P. 4(c)(2)(C)(i), which provides that service may be made

> pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State.

However, no such means of rescuing failed attempts at effective service under 4(c)(2)(C)(ii) could possibly apply here, because the plaintiff did not attempt any follow-up service.[6] Rule 4(c)(2)(C)(ii), as the

---

tempted pursuant to the (C)(ii) procedure for service by mail. In the instant case it is clear that service was attempted expressly under Rule 4(c)(2)(C)(ii), because a copy of Form 18–A was enclosed with the summons and complaint. That form announces: "The enclosed summons and complaint are served pursuant to Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure."

**4.** The acknowledgment form provides in pertinent part:

> If you do not complete and return the form to the sender within 20 days, you ... may be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law.
> Fed.R.Civ.P., Form 18–A.

**5.** The shortcomings of Rule 4(c)(2)(C)(ii) as presently drafted have become well recognized. *See, e.g.,* Sinclair, *supra,* 73 Va.L.Rev. 1183; *Report of the Committee on Federal Courts of the New York State Bar Association On Service of Process by Mail Pursuant to Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure,* 116 F.R.D. 169 (1987). These shortcomings prompted the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States to circulate proposed amendments to the subsection. The amendments were designed, *inter alia,* to avoid misleading plaintiffs into thinking

that service could be effected by mail under Fed.R.Civ.P. 4(c)(2)(C)(ii) without the affirmative cooperation of the defendant. The proposed amendments more accurately identify the notice and acknowledgment procedure as a request to defendant by plaintiff for a waiver of formal service. Committee on Rules of Practice and Procedure, *Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate Procedure and the Federal Rules of Civil Procedure* 22–25, 28 (Sept.1989). The Judicial Conference has submitted revisions of these proposed amendments to the Supreme Court for consideration. *Proceedings of the Judicial Conference of the United States* 102 (Sept. 12, 1990).

**6.** Even if the failed Rule 4(c)(2)(C)(ii) service could, without a follow-up, alternatively be treated as an attempt at Rule 4(c)(2)(C)(i) service, we question whether the form of service undertaken here would satisfy the Massachusetts requirements. Mass.R.Civ.P. 4(e)(3) permits service "by any form of mail addressed to the person to be served and requiring a *signed* receipt." *See also* Mass.Gen.L. ch. 223A, § 6(a)(3). However, in an action against a domestic corporation, Mass.Gen.L. ch. 223, § 37 requires that "service shall be made upon the president, treasurer, clerk ... or ... upon any member of the corporation." In this case the material in question was not addressed to any

District of Columbia Circuit has observed, requires "that if a defendant does not return the notice of acknowledgment, the plaintiff must make a second attempt to secure service on that defendant if he is to be further pursued in the litigation." *Combs v. Nick Garin Trucking,* 825 F.2d at 443.

Thus, a failed effort at service under Rule 4(c)(2)(C)(ii) is not alchemized by that failure into an effort under Rule 4(c)(2)(C)(i) pursuant to state service provisions. Permitting such a transformation would violate the clear language of the Rule and unfairly prejudice the defendant without notice of the necessity to respond. The plaintiff must separately undertake some other form of authorized service as a follow-up to the failed effort under subsection (C)(ii). *See Combs v. Nick Garin Trucking,* 825 F.2d at 444–48; *Stranahan Gear Co. v. N.L. Indus., Inc.,* 800 F.2d 53, 56–57 (3d Cir.1986); *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.,* 733 F.2d at 1089.[7] This posed no significant burden for the plaintiff here, yet the plaintiff chose not to undertake the undemanding effort required to insulate its case from effective attack on grounds of insufficiency of service. The consequence is that plaintiff is deprived of its judgment on the merits.

We recognize that there is a high degree of formalism in our conclusion that this case must be dismissed for failure of proper service, despite the obvious fact that the defendant has received actual notice of the lawsuit. But the service rules were established to provide bright lines and avoid entangling the courts in ad hoc determinations about whether and to what degree actual notice of a lawsuit was provided. If these rules are to be modified, it must be through the authorized rule-making procedure—as is currently being undertaken, *see generally supra* note 5—and not through the practical and understandable, but unauthorized, disinclination of courts to countenance clever reliance on technical objections such as those raised by the defendant here.

### B. *Diversity Subject Matter Jurisdiction*

■ The district court was also drawn into error in asserting subject matter jurisdiction. The complaint alleges that MDS is a Delaware corporation and that its principal place of business is in California. The HDG answer specifically denied this second claim. Once jurisdictional allegations are challenged, the party asserting diversity has the burden of establishing those allegations with competent proof. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *Topp v. CompAir Inc.,* 814 F.2d 830, 839 (1st Cir.1987); *de Walker v. Pueblo Int'l, Inc.,* 569 F.2d 1169, 1172 n. 4 (1st Cir.1978). No presumption of truthfulness attaches to the allegations.

of these designated individuals, but simply to "HDG Software, Inc.". The Massachusetts Supreme Judicial Court has ruled that service by registered mail addressed simply to a foreign corporation by name (and not to one of the designated individuals) is invalid. *Kagan v. United Vacuum Appliance Corp.,* 357 Mass. 680, 685, 260 N.E.2d 208 (1970). The obvious purpose to requiring that the mailing be addressed to (and served upon) certain designated individuals is to ensure that the material will be brought to the attention of a person with proper authority immediately. If the material is simply addressed to the corporation and may be signed for by anyone at that address, it could easily fail to arrive in the proper hands in a timely manner.

7. A number of courts, giving a close reading to the language of Rule 4, have held that any subsequent attempt following a failed effort to effect (C)(ii) mail service, must utilize personal service. *Combs v. Nick Garin Trucking,* 825 F.2d at 443 n. 55 (citing cases). *But see Humana, Inc. v. Avram A. Jacobson, M.D., P.A.,* 804 F.2d 1390, 1393 (5th Cir.1986) (following failed attempt at federal mail service, service may be made pursuant to state law procedure). Because no second effort was made to serve HDG, we need not decide whether an attempt to utilize 4(c)(2)(C)(ii) precludes later resort to 4(c)(2)(C)(i). In addition, we decline to address questions concerning the effectiveness, under the current rules, of methods other than personal service after the twenty day period following the initiation of (C)(ii) mail service, because the proposed revisions of Rule 4 do so directly. *See supra* note 5. We suggest, however, that under the current rules, a careful practitioner should pay careful attention to the twenty day period after (C)(ii) mail service is initiated and, absent return of the acknowledgment within that time, act promptly to effect personal service within the 120 period allowed by Fed.R.Civ.P. 4(j).

*Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir.1977).

■ For purposes of determining whether jurisdiction is properly asserted on the basis of diversity, a corporation is considered to be a citizen of its state of incorporation as well as the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). In order to find diversity jurisdiction, a federal court must identify the principal place of business of a corporation, regardless of whether the corporation has ever made such an identification for itself. *Topp v. CompAir, Inc.*, 814 F.2d at 839. The facts at the time the action is commenced govern the diversity determination. *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957); *Lugo–Vina v. Pueblo Int'l, Inc.*, 574 F.2d 41, 42 n. 1 (1st Cir.1978). If the matter is contested, the burden of proving a corporation's principal place of business, based on the location of corporate activities at the time suit is instituted, rests upon the party asserting existence of diversity jurisdiction. 13B Wright, Miller & Cooper, *Federal Practice & Procedure* § 3625, at 640 (1984). Where there is inadequate evidence adduced to establish the location of a corporation's principal place of business at the time the complaint was filed, there are insufficient facts to support diversity jurisdiction. *Cf. O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir.1982) (party seeking to invoke diversity jurisdiction which fails to avail itself of opportunity to present evidence acts at its own peril).

MDS did not file an opposition specifically addressed to the motion to dismiss based on lack of diversity; nor did it file any affidavits or other documentary evidence designed to support the allegation in the complaint that California was its principal place of business. Other filings in the case, however, supply a factual basis for approaching the principal place of business issue.

■ It appears that MDS was incorporated in Delaware and that it is a subsidiary of Polaroid, a Massachusetts corporation. There is, however, no direct evidence in the record demonstrating the principal place of business of MDS on the date the complaint was filed, January 25, 1989. To be sure, there are letters between HDG and MDS which indicate that MDS had its corporate offices in California at least for some time prior to February, 1988. The term "Corporate Office" with an Irvine, California, address is placed at the bottom of the MDS Massachusetts stationery used for those letters. That stationery suggests that the MDS home office or "nerve center" was located in California at that time. In addition, an MDS brochure indicated that at one point the plaintiff maintained three "regional service centers" including one in Hopkinton, Massachusetts. In the absence of any indication to the contrary, it might be reasonable to infer that the MDS corporate offices were not moved by January, 1989.[8] However, it remains entirely

---

**8.** On the other hand, evidence submitted by HDG provides some, albeit muddled, evidence of corporate reorganization that makes this inference less reliable than it might otherwise be. According to a company brochure, Media Duplication Services *Inc.* was formed in 1985 by Control Data Corporation (Minnesota) and Media Systems Technology (California). A certificate from the Massachusetts Secretary of State indicates that Media Duplication Services *Ltd.* came about in 1987 as the result of a name change from "Polmag Services, Inc.," a corporation organized that year in Delaware. The affidavit of a Polaroid employee, signed September, 1989, discloses that Media Duplication Services *Ltd.* is a wholly owned subsidiary of Polaroid, a Massachusetts corporation. In the correspondence submitted, Polaroid's name first appeared on a letter of April, 1988 (letterhead imprinted "Polaroid/MDS Ltd." with no address), and

again in September, 1989 ("Polaroid/MDS" with no reference to a California "corporate office," but providing a different California address). Correspondence and invoices prior to February, 1988, all indicate the name of the company in question as Media Duplication Services, *Inc.*

Despite its relevance for diversity purposes, there is no evidence in the record regarding the particulars of the relationship between the plaintiff and Polaroid, e.g. the degree of control, the relationship of their respective activities, the membership of their boards of directors, the maintenance of their books, or even when it came about. *Cf. de Walker*, 569 F.2d at 1171 (discussing factors showing parent and subsidiary are distinct corporate entities); *Topp v. CompAir, Inc.*, 814 F.2d at 836–37 (same).

In addition, and more fundamentally, we note the apparently well-founded objection concerning lack of identity made by HDG in its opposi-

unclear what functions the California "Corporate Office" performed and the relation of that office to MDS's other activities.

Comparable evidence was considered insufficient in *de Walker,* 569 F.2d at 1171–72. Noting that the annual report of the corporation in question included New York City as a site of one of its "executive offices," we observed in *de Walker* that such a description gave no indication of the character of these offices, absent information about who was employed there and which corporate affairs were conducted there. *Id.* Notably absent from the evidence here are factual allegations bearing on the array of factors typically considered in determining a corporation's principal place of business, *e.g.:* location of directors' meetings and where major policy decisions are made; location of managers and other corporate personnel who direct daily operations; location of the operations themselves; location from which corporate income tax is filed; location of bank accounts. *See, e.g., Topp v. CompAir, Inc.,* 814 F.2d at 838. *See generally* 13B Miller, Wright & Cooper, *Federal Practice & Procedure* § 3625 (1984). Although we are sensitive to the fact that addressing a challenge to diversity can sometimes produce delay and otherwise be costly, we note that when a corporation is called upon to establish its own citizenship—particularly, as in this case, a corporate plaintiff which has chosen to initiate the litigation under the federal courts' diversity jurisdiction—the imposition is hardly overwhelming because information concerning "the relevant factors regarding its principal place of business normally is available to it through its own corporate records," *id.* § 3625, at 641.

██ A district court's determination of citizenship for purposes of diversity jurisdiction may not be set aside unless it is clearly erroneous. *Valedon Martinez v. Hospital Presbiteriano,* 806 F.2d 1128, 1132 (1st Cir.1986); *accord U.S.I. Properties Corp. v. M.D. Constr. Co.,* 860 F.2d 1,

6 (1st Cir.1988), *cert. denied,* 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989). But, in the appeal before us, the district court's bare, unexplained denial of the motion to dismiss for lack of subject matter jurisdiction does not provide a basis to evaluate the factual grounds for its decision. No doubt if counsel for the plaintiff had been candid when asked on the day of trial concerning his awareness of any outstanding jurisdictional issues or if defendant's counsel had appeared to press the matter, the district court would have inquired into the matter more fully.

As the record now stands, however, the evidence of principal place of business is significantly less informative even than that we have judged in other cases to be insufficient to meet the burden. *Cf. de Walker,* 569 F.2d at 1172 (no diversity because plaintiff did not establish company's "nerve center" or any substantial part of its operations was outside the forum); *Lugo–Vina,* 574 F.2d at 44 (evidence insufficient for finding that "nerve center" was in another state). Here again, the consequence of the plaintiff's neglect of the predicates to jurisdiction—in this instance its failure to take the undemanding steps necessary to establish its principal place of business—is that the plaintiff is deprived of its judgment on the merits.

### III

On the appointed day for trial in this case Joseph Wine, trial counsel for the defendant, failed to appear. One week before, Wine had sent a letter to counsel for MDS advising that he would not appear, on the instructions of his client, which still maintained its jurisdictional objections. Counsel for MDS forwarded a copy of Wine's letter to the district court. Before entering judgment, the trial judge heard from one witness, a Polaroid employee. Then, based on the conduct of defendant's counsel and a finding that the defendant's affirmative defense and counterclaim had been made in bad faith, the district court

tion to summary judgment for the plaintiff. There was no evidence that Media Duplication Services, *Ltd.,* the Polaroid subsidiary, was enti-

tled to payment for goods ordered from Media Duplication Services, *Inc.*

orally announced sanctions would be imposed on Attorney Wine pursuant to Rule 11. The written Order on Sanctions the district court issued that day recited Fed.R. Civ.P. 11, 16 and 28 U.S.C. § 1927 as authority for the sanction.

 Considerable discretion is vested in a district judge to decide whether to impose sanctions and what form they should take. *Lancellotti v. Fay*, 909 F.2d 15, 19–20 (1st Cir.1990) (discussing Rule 11 sanctions); *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 393–94 (1st Cir.) (same), *cert. denied*, ── U.S. ──, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990). However, we do not "rubber-stamp" decisions of the district court to impose sanctions. *Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 17 (1st Cir.1983) (upholding dismissal as sanction). In our review, we apply an abuse-of-discretion standard to "all aspects of a district court's Rule 11 determination." *Cooter & Gell v. Hartmarx Corp.*, ── U.S. ──, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). We will apply the same standard to the other announced bases for sanction. *See, e.g.*, *Barreto v. Citibank*, 907 F.2d 15, 16 (1st Cir.1990) (dismissal for failure of counsel to appear reviewed only for abuse of discretion).

Under the circumstances of this case, we find an abuse of discretion as a matter of procedure in conducting sanction proceedings without notice to defense counsel. Moreover, we find an abuse of discretion as a matter of substance: it was clearly erroneous on this record for the district court to find that the defendant's affirmative defense and counterclaim, both based on allegations of defective product, were made in bad faith.

### A. *Procedure*

Although we have in the past declined to endorse any *per se* rule—and we do not adopt one today—we have noted the general desirability and sometime necessity of affording notice and an opportunity to be heard when monetary sanctions are imposed. *In re Richardson*, 793 F.2d 37, 40 (1st Cir.1986); *see also Boettcher v. Hartford Ins. Group*, 927 F.2d 23, 25–26 (1st

Cir.1991); *Anderson v. Beatrice Foods Co.*, 900 F.2d at 396–97.

 A Rule 11 sanction does not require a full hearing in every case, and we continue to adhere to the view of the Rules Advisory Committee that the Rule 11 procedural format "should depend on the circumstances of the situation." *Muthig v. Brant Point Nantucket Inc.*, 838 F.2d 600, 606–07 (1st Cir.1988) (motion for sanctions and briefing process provided adequate notice and opportunity to be heard). However, a judge's decision to impose Rule 11 sanctions must comport with due process requirements, and the determination of what process is due is, in part, a function of the type and severity of the sanction. *See* Advisory Committee Note, *reprinted in* 97 F.R.D. 165, 198–201 (1983); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 & n. 14, 100 S.Ct. 2455, 2464 & n. 14, 65 L.Ed.2d 488 (1980) (attorney's fees, like other sanctions, should not be assessed without fair notice and an opportunity for a hearing on the record; due process concerns posed by dismissal, however, are greater than those presented by assessing attorney's fees). We note two particular aspects of the instant circumstances which indicate that the procedure followed was inadequate.

 First, the monetary sanction imposed against Wine and awarded to counsel for MDS was in addition to attorney's fees already awarded by the court under Mass. Gen.L. ch. 93A. In general, a higher standard of due process protection is required where, as in this case, the sanction is a fine designed to go beyond compensation and punish an attorney. *See Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir.1987) (the more serious the sanctions in relation to actual expenditures the more process will be due), *cited with approval in Muthig*, 838 F.2d at 607.

 Second, unlike many situations where sanctions are imposed, in this instance no motion for sanctions had been filed by the opposing party beforehand. Where Rule 11 sanctions have been imposed, we have noted the value of prior

notice and "an opportunity to present any additional factual information that might have led [defendant] to form a reasonable belief that the" statements made in its papers were supportable. *Bay State Towing Co. v. Barge American 21*, 899 F.2d 129, 131 (1st Cir.1990). In the instant case the attorney was sanctioned *in absentia*, without either notice or opportunity to respond.

We find that fair notice and opportunity to be heard were lacking in the process afforded here. To be sure, Attorney Wine had notice that the case was set for trial, and he declined to appear. Nonetheless, the sanctions in this instance were not imposed solely on the basis of the failure of counsel to appear, and, in any event, counsel should generally be given *some* opportunity to justify his actions, *Donaldson*, 819 F.2d at 1560. Thus, we conclude that the procedures employed to reach a decision about sanctions did not provide adequate due process to Attorney Wine. The Order on Sanctions must be reversed and the matter remanded to the district court for further proceedings not inconsistent with this opinion.

### B. *Substance*

In the written Order on Sanctions that it entered, the district court relied upon Fed. R.Civ.P. 11, 28 U.S.C. § 1927, and Fed.R. Civ.P. 16. We are of the view that neither Rule 11 nor § 1927 are applicable here. Thus the remand on sanctions will take up the issue only from the perspective of Rule 16.

### 1. Fed.R.Civ.P. 11

In her oral statement of reasons for imposing sanctions, the trial judge focussed exclusively on Rule 11. Our analysis of the applicability of Rule 11 to the facts of this case, leads us to the conclusion that the sanctionable conduct involved here does not come within the ambit of Rule 11.

When making the subsidiary finding of bad faith with respect to the defense that the goods were defective, which provided the basis for her Rule 11 holding, the district court stated:

> That finding is based on the fact that the alleged defect was not disclosed to the plaintiff until some nine to ten months after the first goods were shipped; that the alleged defect was not asserted until after the lawsuit was filed, after the defendant had been defaulted and the default removed, after the defendant's motion to dismiss for lack of jurisdiction had been denied.

The defect the district court focused upon was a problem with the computer diskettes reproduced by MDS for HDG.[9] It was uncontested that these were delivered to HDG "in sealed packages and were shrink wrapped, with a copyright warning if the seal was broken. Therefore the disks could not be inspected by the defendant prior to sale and shipment to a customer." It was to be expected that HDG would only learn of the defects from their customers after they had sold and shipped a number of units. Mr. Huff testified that MDS started to ship the goods in July of 1987 and that "the question of defective product was first brought up in March of 1988 in a letter from HDG." An eight-month delay in discovering and reporting such defects is not particularly surprising.

Furthermore, it is not evidence of its bad faith that HDG failed to assert a *legal* claim based on the defects until it filed its answer in the instant lawsuit. HDG complained about the goods being defective and demanded a credit adjustment over eight months before MDS filed suit. A party should not be encouraged to bring a commercial dispute into court at the earliest point on pain of being considered to have acted in bad faith if it waits until litigation is commenced by its dispu-

---

**9.** HDG also complained that color from the binders they ordered "bled" onto the manuals. It is unclear from the record whether MDS disputed that this occurred. In a letter an MDS employee responded to HDG: "The bleeding of ink on the Kyvar lining of the binders is unfortunately something that is inherent with the materials called for by your specifications. MDS would not issue a credit for this."

tant before it engages the judicial process to rule upon its claim.

Moreover, the district court had itself previously ruled that HDG "raised sufficient issues of fact [in relation to its claim of defective goods] to foreclose the grant of summary judgment." It is black letter law that a party cannot survive summary judgment by resting on mere allegations, but must establish specific facts by affidavit or otherwise. *See* Fed.R.Civ.P. 56(e). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ..." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To survive summary judgment, HDG must have shown that there was sufficient evidence such that "a reasonable jury could, on the basis of the proffered proof, return a verdict" in its favor. *Brennan v. Hendrigan,* 888 F.2d 189 (1st Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).[10]

We note there is significant evidence in the record that the defense concerning defective goods was not fabricated. Attached to an affidavit by Mrs. Gens are copies of a "Product Return Journal" said to record returns due to defective units. Additional attachments included exemplars of allegedly defective diskettes, records of credits issued via check and credit card, and copies of customer complaint cards. In addition, MDS admitted that its own expert, who examined the approximately 100 allegedly defective items exhibited by the defendant, found that

[o]n the basis of what he examined, as it related to the problem with the disketts [sic] on Mr. Wine's PC there were some problems, but he could not render an opinion 100 percent either way as to whether or not the plaintiff was at fault and whether or not the diskett was in fact defective.

The district court dismissed this evidence as insignificant in part because MDS "disclosed to the plaintiff only a minuscule portion of the total of the goods sold, refused to allow them to be tested in a proper way ... [and] as to the vast majority of the goods, the defendant refused to make them available at all." Although trial counsel for MDS represented to the trial judge that HDG only exhibited approximately 100 allegedly defective items and that this was out of approximately 3,000 shipped, he neglected to mention that MDS still held over 1,050 finished units in its warehouse pending further payment. The fact that MDS had over 25% of the goods in its possession makes particularly disingenuous its complaint that their expert was forced to make tests at the defendant's premises and was not allowed to remove to his laboratory the diskettes HDG exhibited for his inspection. Furthermore, there is nothing in the record to indicate how many of the units shipped to HDG remained unsold, or whether HDG had them in stock, still sealed.

Based on the assertion of the counterclaim by counsel for defendant, his demand for trial on the matter of defects and his last minute announcement to counsel for MDS that he would not appear—while continuing to assert jurisdictional objections

---

**10.** As we noted in *Muthig,* however, successful opposition to a summary judgment motion does not always conclusively establish the reasonableness of the claim in question: "the summary judgment standard (based on filed documents) and Rule 11's standard (based on what reasonable inquiry should have revealed, perhaps about *other* information) [are not] necessarily or inevitably congruent." 838 F.2d at 606. Similarly, in *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1472 (2d Cir.1988), *rev'd on other grounds,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), the Second Circuit rejected the argument that a district court's denial of summary judgment shields the nonmoving party from the imposition of sanctions. The

*Calloway* court noted that it was "entirely possible that a baseless factual claim will survive a motion for summary judgment ..." *Id.* at 1473. Significantly, however, in *Calloway* it was eventually revealed that the central basis for opposing summary judgment—an affidavit, prepared for a party by its attorney—stated a material fact for which there had never been any basis. *Id.* In contrast, in the instant case there is nothing in the record which indicates any subsequent revelations—of matters not before the court at the time summary judgment was denied to MDS—undermining the demonstration made by HDG in opposition to the motion establishing the existence of a genuine issue of material fact.

"which the Court had previously disposed of"—the district court found Attorney Wine in violation of Rule 11 and imposed sanctions in the amount of $7500 against him personally. Yet, if the counterclaim was not made in bad faith, there could be no Rule 11 violation and there is considerably less justification for sanction.

██ Certainly Attorney Wine's continued assertion of objections to jurisdiction are not sanctionable—especially since he seemed to hold the reasonable belief that the court had not yet passed on the question of diversity jurisdiction. Moreover, he may not be sanctioned for the decision of his client to default a second time. However, Attorney Wine may, in fact, be subject to sanction for ignoring the court's case management orders. But any such sanction is not authorized under Rule 11 because "the central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell,* 110 S.Ct. at 2454; *see Business Guides, Inc. v. Chromatic Com. Enterprises,* 892 F.2d 802, 813 (9th Cir.1989) (Rule 11 applies only to signed papers and not to such things as oral arguments), *aff'd,* — U.S. ——, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

### 2. 28 U.S.C. § 1927

Section 1927 provides that:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

██ In this case the sanction provided by § 1927 would be wholly redundant if we had not reversed the judgment and ordered dismissal. Having imposed attorney's fees under Mass.Gen.L. ch. 93A, the district court was not authorized to impose them again under § 1927. An argument can be made that because we have reversed the judgment, including the award of attorney's fees, on jurisdictional grounds, § 1927 may again be considered a ground for imposing sanctions. But, as we have found in Part II above, the jurisdictional grounds doggedly pressed by the defendant and his counsel, while technical, were also well-taken and not unreasonable. Moreover, as we have found in Part III.B.1 above, the substantive defense and counterclaim presented by defendant similarly appear to have had a reasonable basis in fact. The failure to attend to trial responsibilities arguably may constitute the vexatious conduct of litigation. But obstructions to the district court's case management orders are more intelligibly and appropriately approached from the perspective of Rule 16.

### C. *Fed.R.Civ.P. 16(f)*

██ Attorney Wine could be sanctioned under Rule 16 for his failure to comply with the pretrial order by failing to prepare and appear to present his client's position.[11] *See Velazquez–Rivera v. Sea–Land Serv., Inc.,* 920 F.2d 1072, 1079 (1st Cir.1990) (affirming $1,000 fine for negligent failure of counsel to appear at pretrial conference). Rule 16(f) allows the judge to award the reasonable expenses incurred because of such derelictions. In this case, however, it seems difficult to justify compensating the

---

**11.** That rule provides:

(f) **Sanctions.** *If a party or party's attorney fails to obey a scheduling or pretrial order,* or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, *the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just,* and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 16(f) (emphasis added). The relevant portions of Rule 37 do not pertain to monetary sanctions (except to the extent that 37(b)(2)(D) permits an order treating the failure to obey the court as a form of contempt).

attorneys for MDS for the failure of Attorney Wine to appear at trial, since Wine had notified them of his intentions and his non-appearance—far from prejudicing them—was to their advantage.

However, the focus of any sanction need not be limited to compensation of opposing counsel. Rule 16(f) authorizes "such orders ... as are just" and reflects the inherent supervisory power of the court. Thus, "all orders governing the management of a case are enforceable under pain of sanction for unjustifiable violation. Trial judges have considerable discretion in the selection and imposition of sanctions." *Barreto*, 907 F.2d at 16.[12] We have no doubt about the obligation of an attorney to inform the court directly—and well in advance—when planning to boycott a proceeding he has asked for. And we have no hesitation in endorsing the use of punitive monetary sanctions as a means of deterring neglect of that obligation. *Id.* ("What lies behind the sanctioning power is ... [principally the need] to deter others from similar conduct.") (citing *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976)).

### IV

For the reasons stated above we reverse the judgment below as against appellant HDG Software, Inc. and direct the district court to dismiss this action. In addition, we reverse the sanction imposed against appellant Wine pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 and we remand for further proceedings, not inconsistent with this opinion, as to any appropriate sanction warranted under Fed.R.Civ.P. 16.

*Reversed and remanded, with directions to dismiss the complaint and for further consideration concerning the im-* *position of sanctions under Fed.R.Civ.P. 16. No costs.*

---

12. As we noted recently, 16(f) is not meant to limit the district court's inherent power to impose sanctions:

Prior to 1983, Rule 16 contained no specific provision for sanctions, although courts did not hesitate to enforce failures by appropriate sanctions. *See Link v. Wabash R.R. Co.*, 370 U.S. 626 [82 S.Ct. 1386, 8 L.Ed.2d 734] (1962) (relying on the inherent power of the court);

*Zavala Santiago v. Gonzalez Rivera*, 553 F.2d 710, 712–13 (1st Cir.1977) (relying on Rule 41(b)). Rule 16(f) was added to "reflect that existing practice and to obviate dependence upon Rule 41(b) or the court's inherent power to regulate litigation," Notes of Advisory Committee on Rules, 1983 Amendment, Subdivision (f); Sanctions.

*Velazquez-Rivera*, 920 F.2d at 1075 n. 4.