April 1, 1993 [Opinion reissued as published.]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2151

CATHERINE M. JONES, ET AL.,

Plaintiffs, Appellants,

v.

WINNEPESAUKEE REALTY, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Norman H. Stahl, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Boudin, Circuit Judge.

David A. Jones for appellants.

March 12, 1993

SELYA, Circuit Judge. In this appeal, a family of
SELYA, Circuit Judge.

disappointed plaintiffs asks us to overturn the district court's

entry of judgment on a counterclaim and to annul awards covering

attorneys' fees and sanctions. Finding no cognizable error, we

affirm.

I. BACKGROUND

In early 1989, Catherine M. Jones and her son,

Alexander T. Jones, filed suit to recover amounts allegedly owed

by Reid S. Littlefield in consequence of Littlefield's agreement

to rent a vacation home in Gilford, New Hampshire. Littlefield,

through counsel, answered the complaint and counterclaimed for

breach of contract, assault, and trespass.1 In response to a

pretrial order, the two original plaintiffs filed an amended

complaint in which they joined David A. Jones, an owner of the

property and a signatory to the lease, as a co-plaintiff.2 Soon

thereafter, plaintiffs' attorney moved to withdraw from the case.

On January 2, 1990, the magistrate-judge allowed the motion.

From that point forward, David Jones served as his own counsel

and at times represented his co-plaintiffs.

1Appellants' suit named a myriad of other defendants. In
the present posture of the case, no useful purpose would be
served by furnishing details relevant to these persons and firms.

2David Jones is Catherine's husband and Alexander's father.
He is also an attorney. He represents the appellants in
connection with this appeal. We note in passing that, although
Alexander Jones is listed in the notice of appeal, brief, and
other documents as an appellant, he is seemingly unaffected by
any of the orders under review. We, therefore, ignore his
presence and treat Catherine and David Jones as if they were the
sole appellants.

2

In April 1990, appellants withdrew most of the causes

of action originally asserted against Littlefield. Buoyed by

this concession, Littlefield moved to dismiss on the ground that

there was no longer a sufficient amount in controversy. Although

the court denied Littlefield's motion and gave appellants

permission to supplement their pleadings, appellants made no

effort to cure the perceived deficiency.3 On August 27, 1990,

the court dismissed their complaint.

Claiming that they had never received notice of the

opportunity to amend their pleadings, and denying (despite a

clear record to the contrary) that they had withdrawn their other

causes of action, appellants sought and obtained the district

court's agreement to reconsider. The court withheld entry of

judgment and set a reconsideration hearing for January 7, 1991.

The appellants did not attend. Instead, they notified the court

a week beforehand that Catherine Jones's medical condition

precluded travel from Pennsylvania to New Hampshire. The court

continued the hearing until June 24, 1991. On that date, only

David Jones appeared, claiming that a daughter's sudden illness

prevented his wife's attendance. The court rescheduled the

hearing for April 6, 1992, but warned appellants that their

failure to attend on the new date would result in dismissal of

the complaint and, possibly, additional sanctions.

3We use the term "perceived deficiency" advisedly. As the
district court recognized, the amount in controversy, for
purposes of federal diversity jurisdiction, is determined as of
the time the case is first commenced. See Klepper v. First Am.

Bank, 916 F.2d 337, 340 (6th Cir. 1990).

3

Notwithstanding the court's admonition, no plaintiff

appeared on April 6. Appellants did not communicate directly

with the court but sent a facsimile transmittal to their former

attorney explaining that illness supposedly prevented them from

attending. Its patience exhausted, the district court acted on

its earlier dismissal of the complaint and entered judgment. On

May 5, 1992, the court denied appellants' motion for

reconsideration and, at the same time, granted Littlefield's

motion for entry of a default in respect to the counterclaim.

The court fixed June 3, 1992 for a dual-purpose hearing (i) to

determine damages on the counterclaim, see Fed. R. Civ. P.

55(b)(2), (d), and (ii) to consider the possible imposition of

sanctions. Although appellants did not show up for the June 3

hearing, the court received evidence and reserved decision.

On September 8, 1992, the court awarded Littlefield

$2,000 on the counterclaim's assault count, dismissed the

remaining counts of the counterclaim (finding Littlefield's proof

of damages inadequate), awarded Littlefield attorneys' fees in

the amount of $6,338.80, and fined Mr. and Mrs. Jones $5,000

apiece for their consistent failure to attend pretrial hearings

and their bad faith in conducting the litigation. This appeal

followed.

II. DISCUSSION

Having studied the record, we conclude that none of

appellants' contentions merit relief from the various orders

entered below. In explaining why this is so, we comment briefly

4

on four of appellants' principal points.

A. The Matter of Status.

Throughout most of this litigation, David Jones has

characterized himself as an "involuntary plaintiff." On appeal,

he maintains this characterization, arguing that, as such, he

cannot be forced to pay sanctions. We do not think that Jones's

point is properly preserved.

To be sure, Jones is an involuntary plaintiff in the

sense that, on August 28, 1989, the magistrate-judge ordered the

two original plaintiffs to join him. (Given his relationship to

the property and the lease, he was a necessary, perhaps an

indispensable, party, see Fed. R. Civ. P. 19.) However,

subsequent to joinder, Jones made several personal appearances in

the case and also made a number of written submissions. While he

styled himself at various times as an "involuntary plaintiff," he

never asked the district court to drop him as a party. That ends

the matter. In this circuit, "it is a party's first obligation

to seek any relief that might fairly have been thought available

in the district court before seeking it on appeal." Beaulieu v.

United States Internal Revenue Serv., 865 F.2d 1351, 1352 (1st

Cir. 1989); accord Dartmouth Rev. v. Dartmouth College, 889 F.2d

13, 22 (1st Cir. 1989); Aoude v. Mobil Oil Corp., 862 F.2d 890,

896 (1st Cir. 1988). Thus, here, neither the question of whether

it was error for the magistrate-judge to direct that David Jones

be joined as a plaintiff, nor the related question of whether

5

Jones participated in the suit under unfair compulsion, is before

us.4

B. The Assessment of Damages.

We next consider Catherine Jones's contention that the

district court improperly assessed damages against her in the sum

of $2,000. The record discloses that, after entering a default

on the counterclaims, the district court scheduled a proof-of-

claim hearing for June 3, 1992, directed Littlefield to submit a

full accounting of his damages in advance, and directed

appellants to respond to this submission before the hearing.

Littlefield filed a written statement of damages and a supporting

memorandum. The appellants filed nothing. They also boycotted

the June 3 hearing. In contrast, Littlefield appeared and

testified. Based upon the evidence before it, the district court

awarded Littlefield $2,000 in damages against Catherine Jones on

the assault counterclaim.

Once the entry of a default establishes the fact of

damage, the trial judge, sitting without a jury in a Rule 55

proceeding, has considerable latitude in determining the amount

of damages. See Sony Corp. v. Elm State Elecs., Inc., 800 F.2d

317, 321 (2d Cir. 1986) (reviewing assessment of damages

following entry of default for abuse of discretion). This

standard dictates the result in the present situation. The

4Moreover, Jones seems to have been perfectly willing to
reap the benefits of party-plaintiff status. In one motion that
he signed, Jones deemed himself "entitled to all the rights the
statutes and/or case law afford to any Party, voluntary or
involuntary." He cannot, of course, have it both ways.

6

district judge determined that, notwithstanding the default, he

should not rely merely on unverified allegations to determine an

appropriate award of damages in a case not involving a liquidated

amount, see, e.g., Dundee Cement Co. v. Howard Pipe & Concrete

Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); Byrd v. Keene

Corp., 104 F.R.D. 10, 12 (E.D. Pa. 1984), and, therefore,

convened an evidentiary hearing to establish the quantum of the

award. See Al-Kazemi v. General Acceptance & Inv. Corp., 633 F.

Supp. 540, 542 (D.D.C. 1986); Systems Indus., Inc. v. Han, 105

F.R.D. 72, 74-75 (E.D. Pa. 1985).

Absent a sum certain, the district court, in arriving

at the award, could do no more than rely on the evidence before

it. Through no fault of either the court or the counterclaimant,

the evidence produced at the hearing consisted mainly of

Littlefield's statement of damages and sworn testimony.

Reviewing this evidence to the extent possible,5 we perceive no

abuse of discretion in a $2,000 award. Littlefield stated, by

affidavit, that Catherine Jones's threats of violence caused him

to experience fear of physical injury and mental distress. Non-

economic damages for apprehension, emotional distress, and

psychic injury are not easily computed and, therefore,

determinations of this type are extremely fact-sensitive. See,

5Appellants have prosecuted this appeal without procuring a
transcript of the June 3 hearing. They must, therefore, bear the
onus of any uncertainties arising out of an incomplete record on
appeal. See Real v. Hogan, 828 F.2d 58, 60 (1st Cir. 1987);

United States v. One Motor Yacht Named Mercury, 527 F.2d 1112,

1113-14 (1st Cir. 1975).

7

e.g., Wagenmann v. Adams, 829 F.2d 196, 216 (1st Cir. 1987)

(observing that "there is no scientific formula or measuring

device which can be applied to place a precise dollar value on

matters such as . . . fright, anxiety, . . . or emotional

scarring"). Bearing in mind the incomplete record, see supra

note 5, the nature of the alleged damages, the modest amount of

the award, the appellants' failure to submit any information

whatever at or before the proof-of-claim hearing,6 and the

deferential standard of review, we are powerless to undo the

award.

C. The Award of Counsel Fees.

It is beyond serious dispute that a federal court

possesses inherent power to shift attorneys' fees when parties

conduct litigation in bad faith. See Roadway Express, Inc. v.

Piper, 447 U.S. 752, 765-66 (1980) (recognizing "bad faith"

exception to general rule that federal courts cannot ordinarily

make fee-shifting awards); Stefan v. Laurenitis, 889 F.2d 363,

370 (1st Cir. 1989) (discussing district court's inherent power

under Roadway doctrine); Peltier v. Peltier, 548 F.2d 1083, 1084

(1st Cir. 1977) (affirming award of attorneys' fees); see also

Chambers v. NASCO, Inc., 111 S. Ct. 2123, 2133 (1991). This

power should be used sparingly and reserved for egregious

circumstances.

6This eschewal is an appropriate consideration on appellate
review of a damage award. See, e.g., Knightsbridge Mktg. Servs.,

Inc. v. Promociones Y Proyectos, 728 F.2d 572, 575 (1st Cir.

1984).

8

The district court, citing the "general non-cooperative

and often contentious manner" in which appellants conducted the

litigation, as well as offering numerous examples of untoward

practice,7 determined that the appellants had surpassed the

threshold of egregiousness. The court made a specific,

meticulously detailed finding of bad faith and exercised its

discretion to shift the burden of Littlefield's fees to the

appellants. We have scrutinized the record on appeal and are

satisfied that, although the court's conclusion of bad faith

might not be inevitable, it is plainly sustainable. When, as in

this instance, there are two plausible views of the record, the

trial court's adoption of one such view cannot constitute clear

error. See United States v. St. Cyr, 977 F.2d 698, 706 (1st Cir.

1992).

Once the court made a supportable finding of bad faith,

it then properly exercised its discretion and shifted the fees.

It considered the essential factor (bad faith), did not add to

the mix any improper factors, and made a plausible judgment call

in weighing the use of its inherent powers. No more was

exigible. See Independent Oil & Chem. Workers, Inc. v. Procter &

Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988). In this age

of burgeoning litigation expense and overcrowded dockets, neither

a sued defendant nor a busy trial judge should have to tolerate

litigants' repeated efforts to stall a case, harass other

7We have examined the pleadings described in the district
court's memorandum order. Many of them are patently frivolous.
Others seem to be riddled with demonstrably false allegations.

9

participants, and frustrate the operation of the justice system.

See, e.g., Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.,

771 F.2d 5, 12 (1st Cir. 1985), cert. denied, 475 U.S. 1018

(1986); Peltier, 548 F.2d at 1084. The court appropriately

invoked its inherent power.8

D. The Imposition of Sanctions.

We discern no abuse of discretion in the lower court's

imposition of monetary sanctions on Catherine Jones and David

Jones, separately, pursuant to its authority under Fed. R. Civ.

P. 16(f).9

Trial judges enjoy great latitude in carrying out case-

management functions. In re San Juan Dupont Plaza Hotel Fire

Litig., 859 F.2d 1007, 1019 (1st Cir. 1988). When confronted

with a party's defiance of its management authority, a district

court is necessarily vested with considerable discretion in

deciding whether to impose sanctions on that party, and, if so,

8In its fee-shifting order, the district court relied, in
the alternative, on its power under state law. Because we find
that the court had inherent power to award counsel fees, see

supra, we need not reach the question of whether, in this

diversity case, New Hampshire law also allowed for fee-shifting.

See Chambers, 111 S. Ct. at 2136-38 (explaining that fee-shifting

under a federal court's inherent power to redress bad faith
conduct is a matter of vindicating judicial authority, not a
matter of substantive remedy, and is, therefore, permissible in a
diversity case whether or not authorized by state law).

9The rule authorizes a district court to impose sanctions
"as are just" against a party for, inter alia, failure to obey a

scheduling or pretrial order, or for failure to appear at a
scheduling or pretrial conference. Fed. R. Civ. P. 16(f).
Because we conclude that the district court properly imposed
monetary sanctions under Rule 16(f), we take no view of whether
the sanctions were likewise permissible in the exercise of the
court's inherent power.

10

in determining what form the sanctions should take. See Media

Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228,

1238 (1st Cir. 1991). Because sanctions are well within the

heartland of the district court's realm, we review a district

court's imposition of them only for manifest abuse of discretion.

See Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075

(1st Cir. 1990); Brockton Sav. Bank, 771 F.2d at 12. Although

such a deferential approach does not confer carte blanche power

to the district court, see, e.g., Navarro-Ayala v. Nunez, 968

F.2d 1421, 1427 (1st Cir. 1992); Figueroa-Rodriguez v. Lopez-

Rivera, 878 F.2d 1478, 1491 (1st Cir. 1988), litigants

"protesting an order in respect to sanctions bear[] a formidable

burden in attempting to convince the court of appeals that the

lower court erred." United States v. One 1987 BMW 325, F.2d

, (1st Cir. 1993) [No. 92-1827, slip op. at 5]; accord

Spiller v. U.S.V. Lab., Inc., 842 F.2d 535, 537 (1st Cir. 1988).

The record supports an assessment that, throughout the

course of this litigation, appellants regularly defied court

orders directing them to attend pretrial hearings, e.g., both

Catherine and David Jones failed to appear at hearings scheduled

for January 7, 1991, April 6, 1992, and June 3, 1992, and

Catherine Jones also failed to appear at a hearing scheduled for

June 24, 1991. Although appellants offered excuses for these

episodes, they offered no irresistibly convincing reasons. To

give one illustration, appellants tried to explain their absences

on April 6 and June 3, 1992, by claiming that, despite all

11

indications to the contrary, they did not receive notice of

scheduled hearings. The district court disbelieved this excuse.

It was entitled to do so. See, e.g., Spiller, 842 F.2d at 537

(noting plaintiff's "history of foot-dragging" and rejecting

similar excuse in affirming dismissal of plaintiff's action for

failure to comply with court orders). To give another

illustration, appellants continually claimed illness (theirs or

some other family member's) but the medical records they

eventually proffered were neither timely filed nor served, as

required, on opposing counsel; moreover, the records were by and

large too vague to satisfy appellants' burden. Given this

checkered pattern, and given, further, that the district court

warned appellants on more than one occasion about the likely

consequences of failure to attend, we find that the court acted

within its discretion in levying sanctions under Rule 16(f). See

Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit

Int'l, Inc., F.2d , (1st Cir. 1993) [No. 92-1458, slip

op. at 12-14] (holding that a counterclaimant's unexcused failure

to attend two pretrial conferences after the court had threatened

sanctions for failure to attend warranted dismissal of the

counterclaim under Rule 16(f)); see also Thibeault v. Square D

Co., 960 F.2d 239, 246 (1st Cir. 1992) (noting that totality of

circumstances for sanction purposes could include events in other

litigation).

We likewise conclude that the sanctions are not

excessive. On this point, the district court, after citing

12

appellants' defiance of two orders directing them to attend

pretrial hearings and noting their chronicled propensity to

engage in similar behavior in earlier proceedings, stated that

the sanctions it chose were fashioned to "deter plaintiffs, and

other litigants, from engaging in the course of conduct displayed

throughout this litigation."10 Deterrence is a widely

recognized basis for determining the amount of a monetary

sanction. See Media Duplication, 928 F.2d at 1242 (approving use

of monetary sanctions under Rule 16(f) as a means of deterring an

attorney's neglect of scheduled proceedings); see also Navarro-

Ayala, 968 F.2d at 1426-27 (discussing deterrence as a basis for

gauging monetary sanctions under Rule 11). Having reviewed the

district court's explanation of why it chose the precise sanction

amounts and finding that the amounts are "within the minimum

range reasonably required to deter the abusive behavior," id. at

1427, we are constrained to conclude that the court below did not

overspill the banks of its discretion under Rule 16(f).

III. CONCLUSION

We need go no further.11 In this case, the district

judge exhibited commendable patience. In the end, however, he

found that appellants consistently defied explicit court orders

directing them to attend pretrial hearings hearings

10In line with the court's goal of deterrence, the sanctions
are to be paid into the registry of the district court.

11Appellants waived many other assignments of error at oral
argument. The rest are utterly lacking in merit and need not be
discussed.

13

necessitated, in the main, by their own absences and requests for

reconsideration of earlier rulings. The judge also found (again,

supportably) that appellants pelted the court with a torrent of

idle motions and submissions, many containing scurrilous

allegations, serving no apparent purpose other than to harass the

court, burden the defendant, and delay a resolution of the case.

Given what the nisi prius roll reveals, together with the

district court's record-rooted finding that appellants blatantly

disregarded the federal courts' authority to manage litigation

through reasonable means, there is no principled basis for

vacating the rulings complained of in this appeal.

Affirmed.

14